SAVERIO GALLO, Respondent, *v.* THE BROOKLYN SAVINGS BANK, Appellant.

Bills, notes and checks— savings banks — payment of deposit to person presenting deposit book, whose identity is doubted, by check payable to true depositor — when savings bank not liable to person who cashed such check upon forged indorsement of payee's signature.

It is the general rule of law in this country, subject, however, to some exceptions, and such is also the common law, that the drawee of a bill or check or persons purchasing it take the paper relying solely on the reputed responsibility of their transferers, and the other parties to it, and its apparent genuineness, and they, therefore, deal in it at their peril.

A person presented to defendant, a savings bank, the bank book of a depositor therein, showing a balance to the credit of a depositor, representing himself as such depositor. Defendant was not satisfied with the identification of the person presenting the book, and who claimed to be the depositor, and refused to give him the money thereon, but gave him a check to the order of its teller and indorsed by him to the order of the person named in the book. The person receiving the check indorsed it in the name of the true depositor who subsequently appeared at the bank and showed that the bank book had been stolen. Plaintiff cashed the check upon the identification of the person holding it, as the payee thereof, had it certified at the bank at which it was payable, and deposited it in another bank to his credit. The check was subsequently paid by the bank on which it was drawn, which bank, on ascertaining the forgery, sued the bank to which it had made such payment, and recovered. The latter bank in turn brought an action against this plaintiff for whom it had cashed the check and judgment went against him. Plaintiff then brought this action to recover from the savings bank which had given the check payable to the depositor named therein to the person presenting the book. The answer in this action alleges the certification of the check, that the indorsement was a forgery, and that plaintiff negligently failed to properly identify the payee. *Held, first,* the certification of the check and its payment by the drawee discharged the defendant as drawer; *second,* the evidence in the record does not establish actionable negligence on the part of the savings bank; *third,* defendant cannot now litigate an issue which he was called upon to present and defend in the suit against him by the bank in which he deposited the check.

*Gallo* v. *Brooklyn Savings Bank,* 129 App. Div. 698, reversed.

(Argued April 7, 1910; decided September 27, 1910.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered December 30, 1908, reversing a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term and granting a new trial.

The nature of the action and the facts, as far as material, are stated in the opinion.

*Alden S. Crane, Leonard M. Snedeker* and *John D. Snedeker* for appellant.  The certification of the check discharged the maker.  (Cons. Laws, ch. 38, § 324; *F. Nat. Bank* v. *Leach*, 52 N. Y. 350.)  Negligence in issuing a check does not deprive the maker of the right to repudiate a forged indorsement.  (*Nat. Ex. Bank* v. *Lester*, 194 N. Y. 461; *Holmes* v. *Trumper*, 22 Mich. 427.)

*J. Stewart Ross* and *Effingham L. Holywell* for respondent.  The draft of the defendant was a negotiable instrument and on identification of the payee plaintiff was authorized by the defendant to cash the same, and in cashing the same was a holder in due course.  (L. 1897, ch. 612, § 91.)  The party for whom plaintiff cashed defendant's draft was the payee thereof, not only by name but as the party to whom defendant delivered the same.  (*F. Nat. Bank* v. *A. E. Nat. Bank*, 170 N. Y. 88; *Sherman* v. *C. E. Bank*, 91 App. Div. 84.)  As between the plaintiff and defendant plaintiff was innocent of any knowledge of any fraud or deceit in the procuring of the draft from the defendant, which plaintiff, without notice of any limitation or infirmity for value, became the owner of and should not suffer.  (*Carpenter* v. *Lougan*, 16 Wall. 273; *Timpson* v. *Allen*, 149 N. Y. 513.)

CULLEN, Ch. J.  The complaint alleges that on November 23rd, 1903, one Antonio Cona was a depositor in defendant bank; that on said day a person representing himself as Antonio Cona presented to the defendant the deposit book of said Cona and in payment of said deposit the defendant delivered

to the said person so presenting the deposit book a check for
$610.50, drawn by its comptroller on the Nassau National Bank
to the order of John Ray, its teller, and indorsed by the teller
to the order of Antonio Cona ; that thereafter, upon identifi-
cation of the said person as Cona, the plaintiff cashed said check
and deposited it with the Oriental Bank ; that the check was
presented by the Oriental Bank to the Nassau Bank, by
which it was paid ; that subsequently an action was brought
by the Nassau Bank against the Oriental Bank to recover the
amount of the check on the ground that the indorsement of
said Cona was a forgery, and the Oriental Bank was compelled
to repay the Nassau Bank the amount of the check ; that
thereafter, in May, 1904, the Oriental Bank brought an action
against the plaintiff to recover the amount of the check on
the same ground — that the indorsement of Cona was a
forgery ; that the plaintiff notified the defendant of the pen-
dency of the action, and that in case it was determined
adversely to him he would look to the defendant to make
good the loss sustained by him ; that the defendant refused
and neglected to intervene and contest the claim of the Orien-
tal Bank ; that the trial of the action resulted in a judgment
in favor of the Oriental Bank, which was subsequently
affirmed by the Appellate Division and by this court, as the
result of which the plaintiff was compelled to pay the amount
of the check as well as the costs of the litigation. It is then
alleged that by reason of the foregoing facts and the negli-
gence and want of care of the defendant, the plaintiff was
damaged in the sum of $1,500 ; that Cona was irresponsible ;
that the plaintiff offered to return said check to the defend-
ant and demanded the payment of the amount thereof and
the costs of the unsuccessful litigation, which the defendant
refused to pay. The answer averred that the indorsement of
Cona was in fact forged ; that the plaintiff had the check
certified by the Nassau Bank, and that he negligently failed
to properly identify the payee.

From the evidence taken at the trial it appeared that one
Antonio Cona was a depositor in the defendant bank ; that

at the time of drawing the check in suit, a young man presented himself to the defendant bank with the deposit book of Antonio Cona. He was unknown to the officers of the bank, and they referred to the book in which savings banks enter statements and information given by the depositor which may tend to identify him when he calls to draw upon the deposit. He answered the questions satisfactorily, but his age seemed to be much less than that given by the depositor. The explanation was given that the depositor was his uncle, but the deposit was his; that his uncle had given the right name, but had mistakenly given his own description; that the uncle had gone to Italy and could not be found. The defendant not being satisfied with the identification, finally refused to give him the money, but to settle the matter agreed to give him a check to the order of Antonio Cona, the name of the depositor. The person so representing himself was Alphonse Cona, though commonly called Tony Cona. Being identified as such, he succeeded in getting plaintiff to cash the check. The true depositor subsequently appeared at the defendant bank and from him it was learned that his bank book had been stolen. Alphonse Cona was subsequently criminally prosecuted for forgery, but the record does not show what was the result of that prosecution. Upon these facts the trial court dismissed the complaint. The judgment entered thereon was reversed by the Appellate Division, which granted a new trial. From that order an appeal was taken to this court.

I do not see upon what theory the present action can be sustained. The learned justice who wrote for the Appellate Division has said : " It is certain that the defendant drew its check and delivered it to the person, claiming to be the payee, or technically in this case the indorsee, and that it knew that he would try to get the money on the check and would succeed, if identified to the drawee or to third parties as Antonio Cona. Either the person presenting the pass book was the depositor or he was trying to perpetrate a fraud. In the latter case the defendant surely did not expect him to

seek out the real depositor and deliver the check to him. It seems to me that the defendant must take one of two positions; either it intended to make the check payable to the person to whom it delivered it, or it knowingly put in his hand an instrument to defraud innocent third parties, and it will not be heard in a court of justice to assert the latter." I am not prepared to admit the proposition that when a bank or individual, not being satisfied of the rights or identity of the party claiming payment from it or him, declines to pay the party in money, but gives a check to the order of the known creditor, it or he is thereby necessarily guilty of negligence or fraud. It is the general rule of law in this country, and such is the common law, that the drawee of a bill or check or persons purchasing it "take the paper relying solely on the reputed responsibility of their transferers, and the other parties to it, and its apparent genuineness, and they, therefore, deal in it at their peril." (*Crawford* v. *West Side Bank,* 100 N. Y. 50.) In *Graves* v. *Am. Exchange Bank* (17 N. Y. 205) it was held that the drawee of a bill of exchange is bound to ascertain that the person to whom he makes payment is the genuine payee or is authorized by him to receive it, and that it is no defense against such payee that the drawee, in the regular course of business and with nothing to excite suspicion, paid the bill to a holder in good faith and for value under the indorsement of a person bearing the same name as the payee, but not that person. It is on the faith of this rule that business in this country is conducted. Corporations, some of them numbering their stockholders by thousands, and usually ignorant of their identity and signatures, pay their dividends by checks to the orders of the various stockholders, transmitted by mail, relying on their right to reclamation from the banks in case the checks have been indorsed or collected by persons not entitled thereto. So, also, a person will send by post to the most distant part of the country his check to the order of another person to whom he wishes to pay or transfer money, confident in the knowledge that the abstraction of the check can entail no loss on

him.   On the continent of Europe a different rule prevails, and payment by the drawee to a party presenting the same, of a bill drawn to order, is valid, even though the indorsement is forged, provided the drawee acts in good faith and without negligence.   In England the common-law rule prevailed as to bills (but not as to checks) until the Bills of Exchange Act of 1882, which adopted the continental rule as to sight bills, but not as to time bills, though a limited protection against forgery of the name of the payee may be had by "crossing."   Such a rule would render the present business methods of this country impossible.   Although at times banks have complained of the harshness of our rule, and in some instances while acting in good faith have been subjected to severe loss (*Shipman* v. *Bank of the State of N. Y.*, 126 N. Y. 318), as a result of this rule banks are used by all classes of our people for the deposit of funds and payment is made by check to an extent unknown elsewhere.   Of course a party entitled to the receipt of money may insist upon its payment in cash and not by check.

Still, there are cases in which the conduct of the drawer of a check or bill, or the maker or indorser of a negotiable instrument, has been such as to impose a liability upon him beyond his intent, as where, having signed an instrument in blank, it is filled in for an unauthorized amount.   So also he may be estopped from denying the right of the particular payee to the ownership of the instrument.   Also cases have arisen presenting nice questions as to what person was to be considered the payee of a bill or check.   (*First Nat. Bank* v. *Am. Exchange Nat. Bank*, 170 N. Y. 88; *Land Title & Trust Co.* v. *Northwestern Nat. Bank*, 196 Pa. St. 230; *Sherman* v. *Corn Exchange Bank*, 91 App. Div. 84.)   In all such cases, however, the action is on the bill itself, and the defendant is estopped as against a *bona fide* holder from asserting that the instrument was for a different amount than that which it purports to be, or that its holder was not entitled to it.   Such cases are on contract, though the contract may rest on mere estoppel.   I can find no case in which it was

sought to maintain an action in tort on the ground of negligence.

On the original transaction, had the check not been paid and the plaintiff sued the defendant as drawer, two questions might have arisen : *1st*, the identity of the payee — whether the person to whom the check was delivered was not to be considered the payee thereof ; *2nd*, whether the defendant was not estopped from denying that he was such payee. Assuming that the circumstances were such as to authorize the court as a matter of law, or a jury as a matter of fact, to determine either of those questions in favor of the plaintiff, the result of such determination would be that the plaintiff was the owner of the check and the indorsement by which he obtained title valid. The certification of the check and its payment by the drawee discharged the defendant as drawer. (Negotiable Instruments Law, § 324 ; *First Nat. Bank of Jersey City* v. *Leach*, 52 N. Y. 350.) I do not see how thereafter it could become liable. When the plaintiff was sued by the Oriental Bank, the claim on which he now seeks to impose liability on the defendant would, if established, have been a complete defense to that suit. If the man for whom he cashed the check was the real payee, or if this defendant was estopped from denying that he was such, there was no forgery of the check so far as the present plaintiff was concerned. On the contrary his title was complete and he was under no liability to refund. (*Hortsman* v. *Henshaw*, 11 How. [U. S.] 177.) But the difficulty is that, as alleged in the complaint, that issue has been decided against him. It is alleged that he called upon this defendant to defend the suit, but the defendant was under no obligation of that character. It discharged its obligation when it provided funds for the payment of the check and the check was paid. It may have been interested in establishing that the check was improperly charged to its account and thus relieving itself from the obligation to make a second payment to the true Antonio Cona, and it may be surmised that the litigation which terminated adversely to the plaintiff was instituted in its behalf. If this fact were proved

the defendant, though not a party to the action by the Oriental Bank, would be concluded by the judgment rendered therein. (2 Black on Judgments, § 539.) But that judgment was against the plaintiff, not in his favor. It is very difficult to see how this defendant could be under any obligation to defend a suit the prosecution of which was in its interest. If, as stated by the learned court below, the defendant was estopped from denying that the man to whom it had delivered the check was the payee thereof, that should have been so decided in the suit of the Oriental Bank against the plaintiff.

The order of the Appellate Division should be reversed and the judgment of the Trial Term affirmed, with costs in all courts.

Werner, J. After a most careful consideration of this case I am constrained to yield my own earlier impressions and to concur in the conclusions set forth in the opinion of Chief Judge Cullen. This change of attitude is due to my inability to work out any theory in law or logic under which a judgment for the plaintiff could be sustained. I had thought it possible to uphold the order of the Appellate Division upon the ground that the defendant's conduct, in the issuance of the check upon which this litigation has arisen, constituted such negligence as to render it liable in tort, without reference to the rules of the law merchant. That position I have been compelled to abandon as untenable for reasons which I shall briefly state.

In the first place, the complaint is not only barren of allegations, which would tend to support that theory, but it affirmatively charges that the check was delivered to a person purporting to be Antonio Cona upon a presentation of the pass book evidencing his right to the moneys therein credited "after identification satisfactory to said defendant, to wit, to said Maynard, the teller thereof, and to F. E. Flandreau, the cashier of the defendant." If this was intended as an allegation of negligence against the defendant the pleader was singu-

larly unfortunate in his choice of language.   As I read the third
paragraph of the complaint, it contains an unequivocal asser-
tion that the defendant issued the check to the person whom
its officers supposed to be its depositor, after taking all the
usual precautions to establish his identity.   If that specific
paragraph of the complaint is thus correctly interpreted, it
overrides the general conclusions of law which are pleaded in
the twelfth paragraph to the effect "that by reason of the
premises, and through the neglect, carelessness and want of
care on the part of the defendant herein" the plaintiff has
been damaged, etc.

As this criticism of the complaint does not appear to have
been made at the trial, it is of no present significance except
as it indicates that the complaint as a whole was framed for
the purpose of pleading a cause of action under the law
merchant, which would be governed by the rules relating to
contract by estoppel, and not by the law of torts under the
head of negligence.

Waiving the form of pleading, however, and assuming,
without deciding, that an action sounding in tort is a permis-
sible and appropriate remedy in circumstances similar to those
in the case at bar, I am of the opinion that the evidence in
the record does not establish actionable negligence.   The
defendant is a savings bank with nearly seventy thousand
depositors.   In the nature of things these could not all be
personally known to its officers.   Equally impracticable would
it be to search the personal history or identity of each depos-
itor with absolute completeness and accuracy.   There are, of
course, a few obvious and necessary precautions which savings
banks may observe without great inconvenience in their busi-
ness, such as keeping a record of the signature, general
description and place of residence of each depositor.   The
practice in that regard is so familiar, general and uniform
that the courts may take judicial cognizance of it without
proof.   This general course was followed by the defendant in
opening an account upon its book in the name of Antonio
Cona, and to the record thus kept the defendant referred when

the pass book issued to him was presented with a request for the withdrawal of the money on deposit to his credit. This latter stage of the transaction may properly be punctuated by reference to a few circumstances which are of paramount importance in passing upon the defendant's alleged negligence. The real depositor was an Italian, and so was the impostor who applied for a withdrawal of the money. As the record discloses no details concerning the character of either signature it is fair to assume that both depositor and impostor belonged to that large class of Italians who either cannot write at all, or who write so imperfectly as to render the handwriting test of little or no value. Almost equally difficult is it to identify persons of this class by their physical characteristics, for there is a general racial resemblance in which individual peculiarities are lost to all except the most critical observers. These were the conditions under which the defendant's officers were called upon to decide whether they would grant or refuse the application for a withdrawal of the money deposited in the name of Antonio Cona. The applicant gave that as his name. He answered the "test" questions correctly, but his description did not correspond with that of the depositor. When his attention was called to this discrepancy he explained it by saying that he had given the money to his uncle, of the same name, to deposit, and that the uncle had given his own description instead of that of the nephew. When asked to produce his uncle at the bank, he explained that the uncle had gone to Italy, and that he was also intending to sail in a day or two. Was this an improbable story? In the light of the well-known habits and customs of this class of persons I should say it was quite probable; and if it was, the defendant's officers had the right to rely upon it, even to the extent of paying him in money. They did not do that, however, but took the precaution to give him a cashier's check which would have to be indorsed by the real depositor before the money could be lawfully obtained upon it. This circumstance is relied upon by the plaintiff to establish the defendant's negligence. The

learned Appellate Division have said : " That the defendant was culpably negligent cannot be doubted. The person to whom the check was delivered succeeded in doing what the defendant knew he would try to do with the means with which it supplied him." That might be quite true if the check had been delivered under circumstances clearly charging the defendant with knowledge that the person to whom the check was issued was an impostor, for then the presumption would naturally have followed that the recipient would resort to unlawful methods to have it cashed. But the facts brought to the knowledge of the bank were such that it had quite as good a right to rest upon the presumption that the check would be properly used as to suspect that it would be criminally altered (*Holmes* v. *Trumper*, 22 Mich. 427), and where that is the case culpable negligence is not predicable. In the case of *Kelley* v. *Buffalo Savings Bank* (180 N. Y. 171), where the relations between savings banks and their depositors were discussed at length, it was held that savings banks, in making payments upon depositors' accounts, are bound to exercise only ordinary care ; and we there endeavored to point out the hardships which a stricter rule would entail, not merely upon the banks, but upon the thousands of poor and honest but unknown depositors who would find it extremely difficult if not quite impossible to so establish personal identity as to leave no room for doubt or mistake.

Upon the other phase of the case, which relates to the plaintiff's right to recover upon the check under the rules of the law merchant, I think Chief Judge CULLEN has demonstrated that the plaintiff cannot recover. When the plaintiff procured the check to be certified, the drawer (defendant) and prior indorsers were discharged (Neg. Ins. Law, sec. 324) and the holder (plaintiff) could thereafter look for payment only to the drawee. But even if that circumstance were not in the case the plaintiff would be no better off. When he was sued by the Oriental Bank, with which he deposited the check, he had the right to insist that the defendant here was estopped, by its conduct, from denying that the person from

whom he received the check was not the payee therein named. That contention would have presented an issue of fact which, if established in the plaintiff's favor, would have been a complete defense in that action. The plaintiff appears to have taken it for granted, however, that the indorsement of Antonio Cona was a forgery, and so the only issue upon which he could have successfully defended that suit seems to have gone against him by default. The result is precisely as conclusive as though it had been fully litigated and affirmatively decided against him. He cannot now litigate an issue which he was called upon to present and defend in the suit against him.

I shall not discuss the case of *First National Bank* v. *Am. Ex. Nat. Bank* (170 N. Y. 88) and the other cases relied upon by the plaintiff. As pointed out in the opinion of Chief Judge CULLEN, they rest upon principles which have no application to the case at bar.

I agree that the order of the Appellate Division should be reversed and the judgment of the Trial Term affirmed, with costs in all courts.

GRAY, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur with CULLEN, Ch. J., and WERNER, J.

Order reversed, etc.