## AMERICAN SURETY CO. OF NEW YORK v. CITIZENS' NAT. BANK OF ROSWELL, N. M.*

(Circuit Court of Appeals, Eighth Circuit. December 3, 1923.)

No. 6366.

1. **Depositaries ⬅10—Subrogation ⬅7(3)—Bank, cashing checks of county treasurer without notice of wrongdoing, not liable to county.**

Where defendant bank, a designated county depositary, paid county treasurer's checks drawn by him in his official capacity, on it and other banks, by its cashier's checks and drafts on its New York correspondent,

---

and the county treasurer indorsed the names of payees on the cashier's checks and drafts and converted them to his own use, but the bank had no notice of wrongdoing, *held*, that defendant was not liable to the county, it not being either drawer, payee, or indorser on the cashier's checks or the drafts, and defendant not being under any duty, contractual or otherwise, towards it; and, even assuming it could have recovered from the bank the amount which the bank was paid by the county treasurer for the cashier's checks and drafts, the surety on the statutory bond of the treasurer, who had made his shortage good, would not be subrogated to such right, in view of the rule that, where the equities are equal, there is no right to subrogation.

2. **Subrogation** ⊚⟶41(5)—Bill must show superior equity.

A bill to enforce right of subrogation must show a superior equity in plaintiff to withstand demurrer.

3. **Evidence** ⊚⟶60—Honesty presumed.

Until there be reasonable ground to think otherwise, a presumption prevails that one acts honestly and keeps within the requirements of the law.

Appeal from the District Court of the United States for the District of New Mexico; Colin Neblett, Judge.

Suit by the American Surety Company of New York against the Citizen's National Bank of Roswell, N. M. From an order dismissing the bill of complaint, plaintiff appeals. Affirmed.

Francis C. Wilson, of Santa Fé, N. M. (Harold C. Perry, of Santa Fé, N. M., on the brief), for appellant.

R. D. Bowers, of Roswell, N. M., for appellee.

Before STONE and LEWIS, Circuit Judges, and KENNEDY, District Judge.

LEWIS, Circuit Judge. On demurrer the bill of complaint was dismissed, and plaintiff below has appealed from that order. It was surety on the statutory bond required of one Davisson, as treasurer and collector of Chaves County, New Mexico, for the faithful performance of his official duties, and on his failure to account for all public moneys that came into his hands, it made the shortage good and then sued appellee to recover of it $6,156.05, included in that shortage, on the claim that appellee bank was liable to the county for it, and by subrogation to the right of the county it was equitably entitled to recover from the bank. If the bank was not liable to the county on the facts pleaded, or if those facts do not raise the equitable right of subrogation, in either contingency the surety's case falls. Bearing in mind the applicable statute, the case as made out by the complaint is this: Three banks, the First National, the American National, and appellee, Citizens' National, all at Roswell, Chaves County, were designated, in accordance with the State statute, as depositaries of public funds, and they each qualified as such by giving the statutory bond for safe keeping of public funds deposited with them, and that they would pay out those funds on the order or check of the officer authorized to withdraw them. As public funds came to Davisson they were deposited by him in the depository banks, and they could then be paid out and withdrawn only on his official order or check. In

⊚⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

July, September and October, 1920, Davisson gave four checks all signed by him in his official capacity, one on appellee bank for $750.-80, one on American National Bank for $1,500.00, and two on First National Bank for $2,800.00 and $1,105.25, and in each check appellee was named as payee. These four checks appear to have been the official form in use by Davisson, each carrying this over-inscription, "Ben C. Davisson, Treasurer and Collector Chaves County," each numbered, and they made up the $6,156.05. At different times, as the checks were dated, Davisson went to appellee bank and with the $1,500.00 check and the $2,800.00 check, procured from appellee its two cashier's checks for like amounts, one payable to A. F. Crumm and the other to A. C. Ground, and with the other two checks he procured from appellee its two bank drafts on the National Park Bank of New York, one for $750.80 payable to A. A. Anderson, and one for $1,105.25 payable to A. K. Crumm. Davisson indorsed, without authority to do so, the names of the payees on the cashier's checks and drafts and converted them to his own use. Appellee paid its two cashier's checks on presentation in due course. One of the checks bore Davisson's indorsement also. It came to appellee for payment through another bank. The other check did not have his indorsement but another individual indorsement. The two drafts each passed through two other banks before they were paid by the National Park Bank. One of them bore Davisson's indorsement, the other did not, but each bore other individual indorsements. The New York bank, of course, charged the drafts on payment to account of appellee bank; but it is not alleged when, if ever, they were returned to appellee bank.

[1] On these facts counsel for appellant argue that payments of the checks and drafts containing forged indorsements of the names of the payees rendered appellee liable to the county for the amounts for which they were drawn; and they cite Morse on Banks and Banking (5th Ed.) §§ 462, 474; U. S. v. National Bank, 205 Fed. 433, 123 C. C. A. 501; National City Bank v. Third National Bank, 177 Fed. 136, 100 C. C. A. 556; Jordan-Marsh Co. v. National Shawmut Bank, 201 Mass. 397, 22 L. R. A. (N. S.) 250, 87 N. E. 740; Gallo v. Savings Bank, 199 N. Y. 222, 92 N. E. 633, 32 L. R. A. (N. S.) 66; Harter v. Mechanics' National Bank, 63 N. J. Law, 578, 44 Atl. 715, 76 Am. St. Rep. 224; McNelly Co. v. Bank of North America, 221 Pa. 588, 70 Atl. 891, 20 L. R. A. (N. S.) 79; Western Tel. Co. v. Bi-Metallic Bank, 17 Colo. App. 229, 68 Pac. 115, and other like cases. But these are all instances of checks drawn on banks by those having deposits in the banks on which the checks were drawn, and the checks were drawn against those deposits. A bank and its depositor stand in relation of debtor and creditor, and the contractual' relation between them binds the bank by implication to honor only genuine checks of its depositor and those having genuine indorsements of payees named in those checks. As between it and its depositor it is burdened with the duty of not paying forged checks, or genuine checks with forged indorsements. If it pays such checks, as between it and its depositor it must stand the loss, and cannot debit the depositor's account with the amount so paid. Neither the county nor its authorized agent drew the two cashier's checks or the two drafts, and

when they were paid they could not be and were not debited against the county or its account in appellee bank. They were charged to the bank and debited against and taken out of the bank's general balance. The cases cited and the principle which they declare have no application to the facts here. The relation of bank and depositor and the duty and rights of each are stated in Leather Manufacturers' Bank v. Merchants' Bank, 128 U. S. 26, 34, 9 Sup. Ct. 3, 4 (32 L. Ed. 342), thus:

"The specific money deposited does not remain the money of the depositor, but becomes the property of the bank, to be invested and used as it pleases; its obligation to the depositor is only to pay out an equal amount upon his demand or order; and proof of refusal or neglect to pay upon such demand or order is necessary to sustain an action by the depositor against the bank. The bank cannot discharge its liability to account with the depositor to the extent of the deposit, except by payment to him or to the holder of a written order from him, usually in the form of a check. If the bank pays out money to the holder of a check upon which the name of the depositor, or of a payee or indorsee, is forged, it is simply no payment as between the bank and the depositor; and the legal state of the account between them, and the legal liability of the bank to him, remain just as if the pretended payment had not been made."

See also 2 Michie, Banks and Banking, § 148. There is, then, no basis here for the principle contended for and it must be put aside.

But it is further alleged in the complaint that appellee was familiar with the handwriting of Davisson, and that it was negligent in not discovering that he had forged indorsements of the payees' names on the cashier's checks and drafts and in not refusing on that account to pay them. It is not alleged that appellee knew the genuine signature or handwriting of any of the payees, nor whether the four payees were real or fictitious persons, and if real whether the county was indebted to any of them for the amounts named in the checks and drafts, or for any amount. There being no allegation that any of the payees were real persons and creditors of the county and that the cashier's checks and drafts were properly procured as means of paying them, we see no substantial reason for the complaint that the payees named did not get the money on the checks and drafts. If they were not creditors and had gotten the money the county would have been in no worse plight, barring its right to go after them, than it was. In that event, or if the payees were fictitious, it has suffered no loss or damage on account of the forgeries or the alleged negligence in not discovering the forgeries, and negligence without damage is not actionable.

We think the situation plain and it cannot be confused by argument. Appellee knew that Davisson had a right in his official capacity to check out the funds in the three depositaries and that they had bound themselves under the statute and their bonds to honor his check when presented. It had no knowledge or intimation of his purposes and intention, when he procured the two cashier's checks and two drafts, to unlawfully convert their proceeds to his personal use. There was nothing about any of the four transactions which could arouse suspicion. As it turned out, there is every reason to believe now from the facts stated that all of the payees were fictitious, and the transac-

tions were all planned beforehand to facilitate and cover up the embezzlements. It is apparent that the cashier's checks and drafts remained in the hands of Davisson until he disposed of them to third parties. He got the money on them and accomplished the embezzlements before the two cashier's checks came back to appellee for payment and its alleged negligence in not discovering the forgeries on them cannot be regarded as the proximate cause of any loss suffered by the county. National Surety Co. v. State Savings Bank, 156 Fed. 21, 26, 84 C. C. A. 187, 14 L. R. A. (N. S.) 155, 13 Ann. Cas. 421; American Bonding Co. v. Welts, 193 Fed. 978, 980, 113 C. C. A. 598. That loss had been sustained already. As to the two drafts on the New York bank it was absolutely bound, without negligence under the doctrine first noted, to drawer, appellee bank, for damage on account of the forgeries, but the county was neither drawer, payee or indorser on those drafts. That doctrine rests on implied obligations arising out of contractual relations. Neither the county nor its agent Davisson bore any such relation to the drafts. Furthermore, the charge of negligence against appellee in not discovering the forged indorsements of the payees' names on those drafts is, we think, without significance. They never came back to the hands of appellee before they were paid by the New York bank, and it had no opportunity to do so. But as the county was neither drawer, payee or indorser on either cashier's checks or drafts it sustained no such relation to them that put appellee under a duty to it, in the respects charged; and where a defendant is under no duty, contractual or otherwise, to the plaintiff there is no cause of action for the former's negligence. 1 Sh. & Redf. on Neg. (5th Ed.) § 8. In Bank v. Ward, 100 U. S. 195, 202 (25 L. Ed. 621), it is said:

"* * * It is not every one who suffers a loss from the negligence of another that can maintain a suit on such grounds. On the contrary, the limit of the doctrine relating to actionable negligence, says Beasley, C. J., is, that the person occasioning the loss must owe a duty, arising from contract or otherwise, to the person sustaining such loss. Such a restriction on the right to sue for a want of care in the exercise of employments or the transaction of business is plainly necessary to restrain the remedy from being pushed to an impracticable extreme. There would be no bounds to actions and litigious intricacies if the ill effects of the negligence of men may be followed down the chain of results to the final effect. Kahl v. Love, 37 N. J. L. 5, 8."

See German Alliance Ins. Co. v. Home Water Co., 226 U. S. 220, 229, 230, 33 Sup. Ct. 32, 57 L. Ed. 195, 42 L. R. A. (N. S.) 1000; Id., 174 Fed. 764, 771, 99 C. C. A. 258, 42 L. R. A. (N. S.) 1005.

It is insistently argued that the opinion of this court in National Surety Co. v. State Savings Bank, supra, sustains the claim that the negligence charged states a good cause of action in favor of the county against the bank in this case. The two cases have no similarity in their facts. There the deputy county auditor induced the county commissioners to properly execute manufactured non-negotiable county orders for payment of county funds to fictitious payees. He then indorsed the name of the fictitious payee on one of those orders and sold it to defendant bank. The bank received payment from the county before the county discovered that the order was spurious. The plaintiff

surety company had bound itself on the auditor's official bond, it paid the county's loss and sued the bank for the amount it had received from the county on the spurious order. The opinion holds the complaint good as against the bank's demurrer. It is said the order was spurious, on its face it was non-negotiable, the bank was negligent in not making inquiry before it bought because the order was non-negotiable, it got no greater right than its mythical assignor had, and the county had an action against the bank for money had and received. But notwithstanding the order was spurious and the payee fictitious, when it later appeared on trial that the bank was not negligent in the purchase of the order in the respect charged, a judgment in its favor was here affirmed. National Surety Co. v. Arosin et al., 198 Fed. 605, 117 C. C. A. 313. No such conditions imposing the duty of inquiry on this appellee are found in the complaint. It is not claimed that the bank's transactions with Davisson were out of the usual course, that it was not bound to honor the check on presentation by Davisson, that it improperly accepted from him the three checks drawn on the other depositaries, or that there was anything connected with the transactions with him that would arouse suspicion of his unlawful intentions. They were all ordinary transactions, carried on in tthe usual way. When that case came here the second time, after trial, it appeared that the surety company on the auditor's bond was seeking recovery for other losses which it had made good, against the National German-American Bank. Those losses also were brought about by the payment of other county orders manufactured by the deputy auditor, on which he had indorsed the names of fictitious payees, obtained therefor from the county treasurer checks on the German-American Bank, a depositary of county funds, indorsed on the checks the names of the fictitious payees, presented them to the bank and obtained payments, and the bank charged the payments against the account of the county with it. As to the claimed liability of the county treasurer (Arosin) for issuing the checks' and of the bank for paying them, this court said (198 Fed. 609, 117 C. C. A. 317):

"The primary cause of the loss was the manufacture by Bourne of the false warrants and orders. For his official misconduct the plaintiff was liable. The evidence does not show any negligence on the part either of Arosin or of the National German-American Bank. There can be, therefore, no recovery against either of them."

We are of the opinion that the County of Chaves had no cause of action and right of recovery against appellee on either of the grounds stated and here contended for.

We have not overlooked another allegation to which appellant would have us attach weight in support of its contention, that at the close of each month for several months before the transactions under consideration Davisson would give one of the depositary banks a check on another depositary bank, or to or on some other bank for a sum equal to the amount that he was then short in his accounts, and that this enabled him to cover up and conceal his shortage in the reports of the banks to the State Bank Commissioner at the end of the month, because the payee bank would include the amount of the check in its

report and the drawee bank would not deduct it in its report, the check not having then been presented to it for payment; and it is alleged that these transactions should have put appellee on inquiry when Davisson applied to it for its cashier's checks and drafts. But an inquiry would have been not only presumptuous but futile. Davisson had the right under the statute to draw his official checks on the depositary banks for all or any part of the public funds, and it was the duty of those banks to pay them. Their failure to do so would have been a breach of their bonds, which the statute required them to give. There is not allegation that appellee knew that Davisson was short in his accounts and that he gave those checks to conceal the fact,—only that inquiry would have disclosed his purpose and thus have prevented further embezzlements. But the giving of those checks may as well have been thought to have been for the appropriate purpose of keeping the funds fairly distributed between the banks. Furthermore, this practice of Davisson, alleged to have been indulged in for twenty-two months, if of weight at all, is significant of a custom so long continued that it might have been believed to have had the approval of the county and would be more inducive to lull inquiry and suspicion, rather than to arouse and quicken it. So much for the claimed liability to the county.

But let us assume for the present that Chaves County could have recovered from appellee the amount that Davisson paid for the cashier's checks and drafts. It does not follow that appellant can be subrogated to that right. Fidelity & Guaranty Co. v. Guaranty & Surety Co. (D. C.) 200 Fed. 443, 448. In considering this question the Supreme Court of Minnesota, in Northern Trust Co. v. Elevator Co., 142 Minn. 132, 171 N. W. 265, 4 A. L. R. 510, held:

"When it is sought to enforce the right, something more must be shown than that defendant could have been compelled by the original creditor to pay the debt. While a surety may assert the right against one with whom he had no contractual relations, it must appear that the defendant participated, with notice, in the illegal act of the principal which served to bring about the loss. The right to recover from a third person does not stand on the same footing as the right to recover from the principal. As to the latter, the right is absolute—as to the former, it is conditional."

[2, 3] In Stewart v. Commonwealth, 104 Ky. 489, 47 S. W. 332, it appeared that the deputy court clerk had manufactured witness' certificates. He forged the indorsements of the payees and sold them to Stewart, and Stewart was paid the amounts called for by the Commonwealth. It then recovered from the sureties on the clerk's bond. Thereafter the sureties sued Stewart to recover from him on the claim that the Commonwealth might have recovered from Stewart and that the loss should not fall on the sureties. Being met with the contention that the surety company had bound itself on the clerk's bond for his official conduct the surety company argued that while the manufacture of the certificates was done in official capacity by the clerk his acts in indorsing the names of the payees on them were not, and that therefore the sureties were not liable on their bond for those acts. The court said:

"It was part of Moore's fraudulent design to both issue and indorse the certificates which culminated in producing the loss,"

and that the two acts could not be disassociated so as to designate some as official and some as individual, that the sureties were in fact liable to Stewart (if he had not been paid) and not Stewart to them. In American Bonding Co. v. Bank, 47 Mont. 334, 133 Pac. 367, 46 L. R. A. (N. S.) 557, a court clerk manufactured jury certificates and sold them to the bank. The county took up the certificates and paid the bank without discovering the fraud. The surety company on the clerk's bond made the loss good and then sued the bank. It was held that although the county could have recovered from the bank, as between the surety company and the bank the equities were at least equal and that the bank was not liable to the surety. See also Baker v. Surety Co., 181 Iowa, 634, 159 N. W. 1044.

The right of subrogation is an equitable right, and where equities are equal the right does not exist and there can be no relief. The bill must show a superior equity in the plaintiff to withstand the attack of a demurrer. There was nothing in the transactions themselves between Davisson and appellee to apprise the latter that the former was engaged in misappropriating funds. It is not claimed that there was. Appellee did not knowingly participate in Davisson's unlawful purpose. It was an innocent instrument used by him, and it did in part what the law and its bond exacted of it and in part what any reasonably prudent banker would have done, for all that is charged in the complaint. Under the circumstances disclosed there was nothing to cast suspicion on the transactions and appellee was not bound to assume that Davisson was a wrongdoer, and on that assumption refuse to go on. Until there be reasonable ground to think otherwise, a presumption prevails that one acts honestly and keeps within the requirements of the law. U. S. v. Detroit Lumber Co., 200 U. S. 321, 332, 26 Sup. Ct. 282, 50 L. Ed. 499. The affairs of everyday life and of the commercial world could not go on unless this presumption prevailed. What inequitable or imprudent thing, then, did the appellee do which should cast on it the burden that appellant voluntarily assumed? We fail to find it in the case made by the complaint. As said by this court in National Surety Co. v. State Savings Bank, supra, subrogation is "intended to serve the purpose of compelling the ultimate discharge of a debt or obligation by him who, in good conscience, ought to pay." In our judgment the equities are not equal,—those of the appellee are superior.

Affirmed.

STONE, Circuit Judge, concurs in the result.