Samuel J. Silverman, J.
This is an action for damage claimed to hate been caused to plaintiff, High Point Chemical Co., Inc., by defendant, New York Federal Savings and Loan Association, in negligently permitting the unauthorized withdrawal of the balance of plaintiff’s savings bank account with defendant, New York Federal. There are third-party claims over (a) by New York Federal against First National City Bank for breach of the obligation to pay only to the order of the payee of the check issued by defendant New York Federal in the transaction, and (b) by First National City Bank against Chase Manhattan Bank on the guarantee of indorsement by Chase. By stipulation, if First National City Bank is held liable to New York Federal, then Chase Manhattan Bank is liable over to First National City Bank.
A preliminary question, determinative of some of the issues in the case, is the membership of the board of directors of High Point. The certificate of incorporation and by-laws of High Point provided for four directors. It is undisputed that at all times here relevant Boy E. Berg, the president of the company, his son Dr. Balph Berg and Harry B. Sale, a lawyer who was secretary of the company, were directors. A fourth director Mr. Zelcer, having died, his place was filled by election by the board of William P. Mackay, pursuant to provision of tho bylaws. Although Mackay’s election was later disputed by the Bergs and their counsel, there is evidence in the record by *976 Sale’s direct testimony and the minutes of April 19, 1960, that Mr. Mackay was so elected and was the fourth director. The only evidence the other way is inadmissible hearsay. I find that Mr. Mackay was elected to the board on April 19, 1960, and that at all times from then until after October, 1960, the board consisted of at least these four members. (At least three additional members were “ elected ” to the board, either in disregard of the charter limitation of four directors or in the expectation that at some future date the certificate of incorporation would be amended to increase the size of the board and that these additional members would then become de jure members. The status of these additional directors is not material to the present lawsuit.)
From a date prior to September 1, 1960 until October 24, 1960, High Point had on deposit with defendant New York Federal the principal sum of $10,000. With accrued interest this amounted on October 24, 1960, to $10,486.74. The corporate resolution on file with defendant New York Federal provided for withdrawal of funds only on the joint signatures of both Boy Berg, president, and Harry Sale, secretary.
Prior to September 21, 1960, a sharp intra-corporate conflict developed between Boy Berg and his son Dr. Balph Berg on the one hand and Sale and his associates (including Mackay) on the other. Boy Berg had control of the plant, its books, etc. One of the points at issue in the dispute was whether corporate funds on deposit with defendant New York Federal (and with First Federal of Port Washington) should be withdrawn.
The contending factions within the corporation each called meetings of the board in late September, 1960. Neither faction was able to muster a quorum because only two directors would attend each meeting. However, acting on the basis that Mackay was not a director, the Berg faction contended that it had a quorum — two of the three directors — and went forward with a meeting on September 21. This was attended only by Boy Berg and Dr. Balph Berg and their counsel. At this meeting, the Bergs elected Dr. Balph Berg as acting secretary and authorized withdrawals from all bank accounts on the single signature of Boy Berg or in the alternative of Dr. Balph Berg and specifically authorized Boy Berg to close out the savings account maintained by the corporation with First Federal and Loan Association of Port Washington, and the president was authorized to prepare implementing resolutions permitting withdrawals on the sole signature of the president, Boy Berg. There was no specific reference to the New York Federal account.
*977 As I have held that Mr. Maclcay was a director, it follows that there was no quorum at this meeting, only two of the four directors attending, and thus all actions taken at that meeting, including these bank authorizations, were void.
Without knowledge of the actions taken at the purported meeting of September 21, Sale, acting on his own initiative and the advice of his own counsel, on September 21 wrote a letter to New York Federal advising “ that no funds under any circumstances are to be permitted to be withdrawn from the above account without the signatures of Mr. Roy E. Berg and Mr. Harry B. Sale, or until another resolution is signed by all of the Board of Directors of this company, which directors are ” and he named the two Bergs, himself and Mackay. The letter was signed High Point Chemical Co., Inc., by Harry B. Sale, secretary.
On October 24, Roy Berg appeared at New York Federal with (a) a purported resolution certified by Ralph Berg as acting secretary, authorizing withdrawals from the account on the signatures of the two Bergs (not Roy Berg alone) and bearing the imprint of what purported to be the corporate seal, but which was actually a new seal which Roy Berg had caused to be made up rather than the old one which was in the possession of Sale; (b) a withdrawal slip for the entire balance of $10,486.74 of the High Point Chemical account, signed by the two Bergs and bearing the same corporate seal; and (c) an affidavit executed by the two Bergs that the passbook had been “ lost or stolen ’ ’; this affidavit was obviously a standard bank form; it contained no particulars or supporting details. In fact, the passbook was in the possession of Sale.
The bank officer who interviewed Roy Berg on this occasion inquired about the letter of September 21 from Sale and was told by Roy Berg that there had been a dispute which had now been resolved and that the new resolution superseded the old one. Thereupon, without communicating with Sale, the bank officer authorized a check to the order of High Point Chemical Co., Inc. for $10,486.74 and such a check was drawn by New York Federal on the First National City Bank and delivered to Roy Berg. Roy Berg deposited this check on October 25 or 26 in the corporation’s account at the Chase Manhattan Bank branch in Port Washington and the check was honored. Under the corporate resolution on file with the Chase Bank, withdrawals from that account could be made on the sole signature of Roy Berg.
The balance in the Chase Manhattan Bank (which hád been overdrawn) having been replenished by the deposit of the *978 $10,4-86.74 from New York Federal, the moneys in the account were then withdrawn and used for various purposes, some concededly proper corporate purposes and some which are attacked by plaintiff corporation as improper.
Plaintiff contends that New York Federal was negligent in delivering the check to Roy Berg and that that negligence was the proximate cause of the damage to plaintiff by reason of improper withdrawals by Mr. Berg from the Chase Manhattan account.
On the issue of negligence, New York Federal contends that it took sufficient precautions when it gave to Roy Berg, the president of the plaintiff, a check payable to the order of plaintiff and thus usable only for plaintiff’s own benefit; that it was not reasonably foreseeable that such a check would be deposited in an account on which the president could draw on his sole signature, and that he would then commit a crime and misappropriate the corporation’s funds. The defendant New York Federal further contends that it having paid the amount of the deposit to the depositor, the plaintiff, and that the money having been deposited in the plaintiff’s own account at the Chase Manhattan Bank, defendant New York Federal’s res¡3onsibility ceased and it cannot be held responsible for misappropriations made from that account any more than from any other corporate funds.
While in other circumstances this argument might be quite persuasive, I think that here the bank was negligent. The circumstances too glaringly pointed to some impropriety. The bank had received explicit warning by Sale’s letter of September 21 not to honor any withdrawls except on the joint signatures of Roy Berg and Sale, and not to honor any changed resolution which did not bear the signatures of all four directors. To this was added the circumstance that Roy Berg did not present the passbook. Instead of making any inquiry from any outside source — -particularly Sale who had written the very explicit warning letter — -the bank chose to accept the bland assurance of Roy Berg, the very man against whom Sale had warned them, that there was no further cause for concern. And as to the failure to present the passbook, the bank accepted a form affidavit containing no details whatever, when the circumstances obviously called for inquiry. While a bank may be and no doubt is justified in acting on papers presented to it in ordinary form, when there is no reason for suspicion, the situation is entirely different when the bank has received explicit warning. It cannot then close its eyes to the warning and say the papers presented to it. are all right in form.
*979 In Gallo v. Brooklyn Sav. Bank (199 N. Y. 222 [1910] the closest case on the facts that has been called to my attention, the court held that the bank was not negligent when it delivered a check payable to the depositor’s order, to a man who claimed to be the depositor, about whose identity the bank had doubts, and who presented the passbook. The Court of Appeals said that the impostor’s story was not improbable and therefore “ the defendant’s officers had the right to rely upon it, even to the extent of paying him in money. They did not do that, however, but took the precaution to give him a cashier’s check which would have to be indorsed by the real depositor before the money could be lawfully obtained upon it. This circumstance is relied upon by the plaintiff to establish the defendant’s negligence. The learned Appellate Division have said: ‘ That the defendant was culpably negligent cannot be doubted. The person to whom the check was delivered succeeded in doing what the defendant knew he would try to do with the means with which it supplied him. ’ That might be quite true if the check had been delivered under circumstances clearly charging the defendant with knowledge that the person to whom the check was issued was an impostor, for then the presumption would naturally have followed that the recipient would resort to unlawful methods to have it cashed. But the facts brought to the knowledge of the bank were such that it had quite as good a right to rest upon the presumption that the check would be properly used as to suspect that it would be criminally altered (Holmes v. Trumper, 22 Mich. 427), and where that is the case culpable negligence is not predicable ” (pp. 231-232).
In the case at bar we have the additional circumstances not present in the Gallo case of an explicit warning letter and an unexplained failure to present the passbook. Accordingly, I think the check was delivered “under circumstances clearly charging the defendant with knowledge that the person to whom the check was issued ’ ’ was not entitled to receive it. It is true that had it so desired, New York Federal would have terminated the depositor relationship with High Point at will, without any signatures by High Points’ officers, and in that event it would merely have sent a check for the proper amount to High Point. But, (a) that is not what happened here and (b) in the face of the explicit warning that it had received, New York Federal would still have been under a duty to exercise reasonable precautions against the money falling into the wrong hands.
The check received by Boy Berg was deposited by him in the corporation’s account with the Chase Manhattan Bank in Port Washington on October 25 or 26, 1960. Immediately prior to *980 that deposit the account was overdrawn by about $90, allowing for the outstanding checks (a tabulation prepared by plaintiff’s counsel indicates a credit balance at that time of $1,647.97 but the calculation in the checkbook itself shows a deficit of about $90).
Plaintiff seeks to hold defendant New York Federal for the following amounts thereafter withdrawn from Chase Manhattan on Roy Berg’s individual signature:

Date of check

October 26,1960 Robert Stickney Kafka
October 26,1960 Roy E. Berg $1,500
October 28,1960 Samuel Bierman $ 500
November 1,1960 F. Max Meyers $ 100
November 15,1960 Roy E.Berg (salary account) $ 500
November 15,1960 Roy E. Berg (travel expense) $ 500
December 1,1960 Joseph Dratler $ 100
December 1,1960 Joseph Dratler $ 500
December 3,1960 Roy E. Berg $ 150

Payee

Amount $5,000 (out of $5,200)
I hold that the New York Federal is responsible for the first two items and not the balance.
The circumstances as to the first item were these: Mr. Kafka, the payee, was owed some $400 by plaintiff for engineering services. Roy E. Berg arranged with Kafka that a check would be drawn to Kafka’s order for $5,200, that it would be immediately cashed, that Kafka would keep $200 and that Mr. Berg would get $5,000. Roy Berg drew a check on plaintiff’s accounts dated October 26,1960, to Kafka’s order for $5,200. Apparently Kafka insisted that checks be issued by the bank and accordingly the $5,200 check was cashed and the Chase Bank issued its official checks dated October 26,1960, one for $200 payable to Kafka and the other for $5,000 also payable to Kafka which he indorsed to Roy E. Berg who used it for purposes not connected with the corporation.
The next item, a check dated October 26, 1960 (and cashed that same day), to Roy E. Berg for $1,500 bears the notation: 1 ‘ Expense reimbursement detailed October 26, 1960. ’ ’ The check stub has this notation: “ Use of personal car for two-year period 18,000 miles at $.05 per mile and accumulated travel expense of $600 — total $1,500.” On its face this item is so strange that I must deem it not to be a valid corporate expense but rather an improper withdrawal by Roy E. Berg for his own purposes.
*981 These two items — the $5,000 and the $1,500 .item — seem to be sheer misappropriation of corporate funds. Was New York Federal’s negligence a proximate cause of the loss suffered by plaintiff?
Defendant, New York Federal, argues that it was surely not foreseeable that the president of the corporation would commit a crime and misappropriate funds of the corporation and that therefore its negligence (which it disputes) was not the proximate cause of the damage, citing Saugerties Bank v. Delaware & Hudson Co. (236 N. Y. 425, 431 [1923]), in which the Court of Appeals said: ‘ ‘ Under ordinary circumstances no one is chargeable with damages because he has not anticipated the commission of a crime by some third party.”
But, of course, this means ‘ ‘ under ordinary circumstances. ’ ’ Where the circumstances are such that the commission of a crime might fairly be anticipated as at least a reasonable possibility, then the intervening criminal act no longer breaks the chain of proximate causation. Thus in the Baugerties case the defendant had improperly delivered wheat without taking up a bill of lading and some months later, the person holding the bills of lading changed the dates and presented them to the plaintiff as security for a loan. The court held that in those circumstances the defendant was not responsible and made the distinction between the kinds of criminal intervention which do attid do not break the chain of proximate causation. The court said (p. 432): ‘1 It might very well be that the defendant in leaving the bills outstanding might be charged under a question of fact with anticipation that they might be presently used, although the wheat had been delivered. We know that this kind of wrongdoing is not infrequent and a party might be charged with the obligation to foresee it. That, however, is not the offense about which we are talking. Bills of lading which had become absolutely stale and useless were resurrected into a condition of life by the crime of forgery and there is nothing to indicate that this offense is so common that the defendant ought to have anticipated it.”
In the case at bar the defendant New York Federal was explicity warned not to permit withdrawal of funds except with the two specific signatures or a new signature resolution signed by all four directors. If an officer of a corporation presented an improper resolution and attempted in violation of the corporation’s resolutions to withdraw money on only one signature, without authority from the board of directors, surely it was within the reasonable range of foreseeability that he wished to make some improper, unauthorized use of the money. Having gone to the improper lengths described to obtain the money from *982 New York Federal, it was surely foreseeable that, he would do whatever else was necessary to carry into effect his plan, even though it involved further improprieties on his part.
The $5,000 and $1,500 items to which I have referred, were apparently part of the contemporaneous scheme of Roy Berg to obtain possession of the money. The $5,000 and the $1,500 items were withdrawn on October 26, the day following the deposit of New York Federal’s check.
% hold that defendant’s negligence was a proximate cause of the loss incurred by plaintiff by the withdrawal of these two items at dates so close to the time of defendant’s negligence.
With respect to the other items challenged, I hold that plaintiff has failed to sustain the burden of proving either that these items were not proper withdrawals or that defendant’s negligence was a proximate cause of the withdrawals. As to each of these items there is a tenable explanation on the records. No proof was adduced as to the nature of these items (other than the payments to Mr. Bierman) except the general statement of Sale that the corporation did not owe these people money. Sale admittedly had no direct knowledge of the operations of the corporation, was deeply involved as a partisan, and on one occasion, made an explanation to the court (with respect to the circumstances of the writing of certain minutes) without mentioning that they were written after the parties were in dispute and consulting adversary lawyers, and after his lawyer had called his attention to the fact that the minutes were incomplete.
Furthermore, none of these items were as close in time to the defendant’s negligence as the first two items.
The $500 item to Mr. Bierman of October 28, 1960, was payment for attorney’s fees by an attorney retained by the president of the corporation. There is no evidence that Mr. Bierman is not fully responsible if the payment was improper.
The November 1,1960 payment of $100 to F. Max Meyers was for travel expenses in assisting Bierman and Roy Berg in corporate business.
The two November 15 items of $500 to Roy Berg and the December 3 item of $150 to Roy Berg state that they are for salary and expenses. The checkbook indicates that Roy Berg had drawn salary irregularly; for all that appears he was owed this salary or expense. At least one of the items was noted on the check stubs apparently by the bookkeeper or accountant, as salary for the week ending November 11, and “loans and exchange ”. Three to six weeks had elapsed between New York Federal’s negligence and the issuance of these checks, and if improper, these checks were at least not part of the original *983 scheme but constitute rather an intervening event which breaks the chain of causation.
The two items of $100 and $500 to Joseph Bratler are marked for services; they were not issued until December 1 and while the $500 check was indorsed to Boy E. Berg, I do not think that is sufficient to show the impropriety of the payment.
Of course, New York Federal is entitled to be subrogated for any claim that High Point may have against third persons for the $5,000 and $1,500 items for which it is being held liable. Upon the trial, plaintiff’s attorney offered to cause High Point to assign to New York Federal, High Point’s claims against Boy E. Berg for payments for which New York Federal is held liable, and I assume that High Point will make such an assignment if New York Federal requests it.
New York Federal claims over against First National City Bank of New York, drawee of the check, because the check was not paid to the order of the payee. But the obligation asserted against New York Federal, and for which I am holding New York Federal, is for its own negligence and does not constitute a breach by the drawee bank of its obligation. It is being held because it negligently delivered the check to the president of High Point under such circumstances as to make it possible and probable for him to misappropriate part of the proceeds of that check. Accordingly the third-party complaint of New York Federal against First National City Bank is dismissed on the merits and the third-party complaint of First National City Bank against the Chase Manhattan Bank is dismissed as moot.
I direct judgment in favor of plaintiff against the defendant, New York Federal Savings and Loan Association, for $6,500 with interest from October 26, 1960. I further direct judgment dismissing the third-party complaint of New York Federal Savings and Loan Association against First National City Bank of New York on the merits and dismissing the third-party complaint of First National City Bank against Chase Manhattan Bank as moot.