(91 App. Div. 84.)

### SHERMAN v. CORN EXCHANGE BANK.

(Supreme Court, Appellate Division, First Department. February 5, 1904.)

1. CHECKS—INDORSEMENT—GENUINENESS.

Where plaintiff made his check payable to B. in payment for certain horses, and the check was regularly indorsed by the B., who was the owner of the horses, to another, to whom the check was paid by the bank on which it was drawn, the fact that the agent of the payee, who sold the horses to plaintiff, falsely represented the owner of the horses to be another person of the same name, who was a person of high business standing, did not entitle plaintiff to recover the money so paid from the bank on the ground that the indorsement of the check was not genuine.

Appeal from Judgment on Report of Referee.

Action by Gardiner Sherman against the Corn Exchange Bank. From a judgment in favor of defendant on the report of a referee, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, INGRAHAM, and LAUGHLIN, JJ.

William Mason Smith, for appellant
Harry N. Avery, for respondent.

McLAUGHLIN, J. This action was brought to recover a sum of money alleged to have been deposited by the plaintiff in the defendant bank. The defendant pleaded payment, and at the trial, to sustain its plea, produced a check for the amount sought to be recovered, which was conceded to have been drawn upon it by the plaintiff. The real issue tried was whether the indorsement of the name of the payee was genuine, and, as bearing upon this issue, it appeared that the plaintiff, by reason of an advertisement in one of the New York newspapers announcing that certain horses and carriages were for sale at a livery stable, called at such place, and saw one

Strong, who represented that he was the coachman of J. L. Baldwin, the owner of the horses; that Mr. Baldwin was a wealthy gentleman, connected in business with the Baldwin Locomotive Works, in Paterson, N. J., and was then at Aiken, S. C.; that the horses had been driven by Mr. Baldwin's family during the preceding summer at Newport. After some negotiations the plaintiff purchased the horses, and in payment gave to Strong the check in question, which was made payable to the order of J. L. Baldwin. The horses not proving satisfactory, the plaintiff sought to stop payment of the check; but, before he gave the defendant notice, it appeared that the same had been presented to the bank by one Miller, and paid by crediting the same to his account. At the time it was paid it bore what purported to be the indorsement of J. L. Baldwin, as well as the indorsement of Miller. Strong testified that a man calling himself J. L. Baldwin delivered the horses to him to sell, and that after he made the sale he delivered the check which he received in payment from the plaintiff to such person; that he saw such person indorse the name "J. L. Baldwin" upon the back of the check, and then deliver it to Miller; and as to the indorsement and delivery he was corroborated by Miller. He admitted that he had never been a coachman for Baldwin, and a fair consideration of his evidence, I think, would justify a finding that his representations to the plaintiff as to who was the owner of the horses was a pure fabrication, made for the purpose of inducing the sale. But even if this be assumed, it does not aid the plaintiff, because the referee has found, and the evidence sustains the finding, that the check was given in payment of the horses purchased from J. L. Baldwin, and that J. L. Baldwin indorsed the check and delivered it to Miller. The fact that the J. L. Baldwin to whom the check was made payable was not the J. L. Baldwin whom the plaintiff had in mind is of no importance. He gave his check in payment of the purchase price of the horses, and he intended to make it payable to the owner. This he did, and the owner indorsed it. First National Bank v. American Exchange National Bank, 170 N. Y. 88, 62 N. E. 1089; Robertson v. Coleman, 141 Mass. 231, 4 N. E. 619, 55 Am. Rep. 471; Emporia National Bank v. Shotwell, 35 Kan. 360, 11 Pac. 141, 57 Am. Rep. 171; Land Title & Trust Co. v. Northwestern National Bank, 196 Pa. 230, 46 Atl. 420, 50 L. R. A. 75, 79 Am. St. Rep. 717. See, also, note 50 L. R. A. 75.

In First National Bank v. American Exchange Nat. Bank, supra, a man who falsely represented himself to be A. W. Hudson, the husband of Olive K. Hudson, made application for a loan upon property owned by Olive K. Hudson, and a trust deed, as collateral security for the loan, was prepared and sent to him at an address given by him. Shortly thereafter a bank in the city where the property was located received a note purporting to be signed by A. W. Hudson and Olive K. Hudson, and a trust deed signed by Olive K. Hudson, together with a letter signed "A. W. Hudson," requesting it to collect the loan and remit the proceeds to A. W. Hudson. The mortgagee paid the amount of the loan to the bank, which remitted a draft on another bank for the proceeds, as directed in the letter purporting to be signed by A. W. Hudson. It was held that, al-

though the signatures to the note and trust deed proved to be forgeries, the draft was enforceable in the hands of a person who, in good faith and for value, purchased it from the person purporting to be A. W. Hudson, the person to whom it was sent, and for whom it was intended.

In Robertson v. Coleman, supra, a person went to a hotel in the city of Boston, and registered under the name of Charles Barney. Shortly thereafter he took a horse and carriage, of which he represented himself to be the owner, to certain auctioneers in that city, and requested them to sell for him. He gave them his name as Charles Barney, and the auctioneers, believing him to be the person of that name who lived at Swanzey, sold the horse and carriage, and gave a check in payment. The check was made payable to Charles Barney. The person to whom it was delivered indorsed it under that name, delivered it to the hotel keeper in payment of his hotel bill, and received the balance in cash. Shortly thereafter the auctioneers, ascertaining that the horse and carriage had been stolen, directed the bank to refuse payment of the check, which it did. In an action by the holder it was held that he was entitled to recover, the court saying:

"It is clear from the facts that, although the defendants may have been mistaken in the sort of man the person they dealt with was, this person was intended by them as the payee of the check, designated by the name he was called in the transaction, and that his indorsement of it was the indorsement of the payee of the check by that name."

In Emporia National Bank v. Shotwell, supra, a person who said his name was Gurnesey represented that he was the owner of a quarter section of land, and thereby obtained from one Shotwell a loan secured by mortgage on Gurnesey's land, and received from Shotwell a draft drawn to the order of Gurnesey. He indorsed Gurnesey's name on the draft, and sold it to the bank. In an action by Shotwell to recover of the bank the amount received by it on the draft, it was held that, although Shotwell was deceived in the transaction, the person with whom he dealt was the person intended by him as the payee of the draft, designated by the name he assumed in obtaining the loan, and that his indorsement was the indorsement of the payee.

In Land Title & Trust Co. v. Northwestern Nat. Bank, supra, a person who gave his name as Ashley called on one Dr. Herman S. Bissey, a resident of Philadelphia, representing that he desired to purchase a lot of land which Bissey owned. He got possession of the title papers, and took them to a responsible conveyancer, to whom he applied for a loan of $5,000, to be secured by a mortgage on the property. The conveyancer, believing the man to be Dr. Bissey and the owner of the premises, negotiated the loan. The mortgagee, desiring title insurance by the Land Title & Trust Company, deposited with it the amount of the loan, to be paid to the mortgagor when a valid mortgage should be executed. When the matter was ready for settlement, Ashley went with his conveyancer to the office of the company, and was there introduced to the settlement clerk as Dr. Bissey. He signed the mortgage, "Herman S. Bissey," acknowledged it before a notary connected with the company, and received from the clerk the company's

check drawn on itself to the order of Herman S. Bissey. This check, indorsed "Herman S. Bissey," was deposited in the Northwestern National Bank by a person who had opened an account with it as G. B. Rogers, and was collected by the bank of the trust company in the usual course of business. Whether Ashley and Rogers were the same person did not appear. Dr. Bissey, who owned the land upon which the mortgage was given, had no knowledge of the mortgage until called upon six months later for the interest. On discovering the fraud which had been practiced upon it, the trust company notified the bank, and demanded the return of the money paid on the check, which was refused, and action brought. The plaintiff had a judgment, but on appeal the same was reversed by the Supreme Court; Judge Fell, who delivered the opinion, saying:

"It is a perverted statement of the whole transaction to say that the check was intended for Dr. Herman S. Bissey, and that he alone was entitled to receive payment. Dr. Bissey had no more right to the check than had Ashley. He had given nothing for it. No one was entitled to it, and, had the truth been known, it would not have been issued. Under the supposed facts on which the trust company acted, Ashley was the owner of the property. He had executed a mortgage, and he was entitled to payment. The clear intention was to pay him, although there was a mistake as to the facts on which the intention was based."

Applying the principle laid down in the cases cited, it is clear that the conclusion reached by the referee is correct. Although the plaintiff may have been deceived as to who was the real owner of the horses, nevertheless the fact is undisputed that the check was given in payment therefor, was made payable to the owner, and, under the finding of the referee, it was indorsed by that person.

It follows, therefore, that the judgment appealed from must be affirmed, with costs. All concur.