Alex M. Ubowich, Also Known as Alex M. Uborwich, Appellee, v. The Northern Trust Company and First Union Trust and Savings Bank, Defendants. The Northern Trust Company, Appellant.

Gen. No. 37,731.

Opinion filed June 28, 1935.

WHITE & HAWXHURST, of Chicago, for appellant; JULIUS J. HOFFMAN and RUTH WEYAND, both of Chicago, of counsel.

FREDERICK A. GARIEPY and OWEN RALL, both of Chicago, for appellee.

MR. PRESIDING JUSTICE SCANLAN delivered the opinion of the court.

Plaintiff sued The Northern Trust Company, a corporation, and First Union Trust and Savings Bank, a corporation, in an action of the fourth class in the municipal court of Chicago. At the close of the evi-

dence it was stipulated that the jury be withdrawn and the cause be submitted to the court. There was a finding and judgment in favor of plaintiff and against The Northern Trust Company, a corporation, in the sum of $1,112.50. The issues were found in favor of the First Union Trust and Savings Bank, and judgment was entered upon that finding. The Northern Trust Company, hereinafter called defendant, appeals.

Plaintiff's statement of claim alleges that he was an heir in the estate of Charles Uborwich, also known as Charles Ubowich, deceased, and as such was entitled to $1,000 as his distributive share in the estate, which sum was deposited, by order of the probate court, with the county treasurer of Cook county, Illinois, for him; that on January 25, 1932, the check, a copy of which is attached to the statement, was issued to him, but it was not received nor indorsed by him, nor by anyone at his request or as his agent; that defendants indorsed the check, as is shown thereon, and cashed the same; that the First Union Trust and Savings Bank cashed the check and paid the sum of $1,000; that demand for this sum has been made of both defendants but they refused payment; that they have received said sum and said check and converted the same to their own use, to the damage of plaintiff in the sum of $1,000. Attached to the statement is a copy of the check, in words and figures as follows:

(Face of check)

"Joseph B. McDonough      No. 587

Feb 8 1932    Treasurer of Cook County

H                                  Chicago, Jan 25 1932

In Payment Of

Estates of Heirs

Share of Estate of Charles Uborwich

Pay to the

Order of Alex M. Uborwich............$1,000.00

The Sum of $1000 and 00cts    Dollars

First Union Trust and Savings Bank
2–9   Chicago, Ill.     2–9   Harry E. Perry
Asst. County Treasurer
(Back of check)
Pay only to within named payee
Alex M. Uborwich
F. F. Roberts
Paid Through Chicago Clearing House
15
Feb. 9   22   P M
The Northern Trust Co.

Pay to the Order of
Any Bank or Banker
Prior Endorsements Guaranteed
The Northern Trust Co.
Chicago
2–15        C. M. Nelson, Cashier        2–15''
Defendant's amended affidavit of merits avers that the defense is as follows:

''1.   Affiant denies that the plaintiff was entitled to have and recover $1,000 as his alleged distributive share in the estate of Charles Ubowich, also known as Charles Uborwich, deceased, at the time of the filing of suit herein, and denies that the plaintiff is now entitled to have and recover the sum of $1,000 as his distributive share in the said estate.

''2.   Affiant further denies that the check described in the plaintiff's statement of claim, a copy of which is attached thereto, was delivered to the payee therein described, or to any attorney or agent acting in his behalf by the drawer of the said check or any one acting in his behalf.

''3.   Affiant further denies that the defendants or either of them have converted at any time the check described in the plaintiff's statement of claim or the proceeds thereof to their own use.

"4. Affiant further denies that the plaintiff has suffered any damage whatsoever as the result of the negligence of the defendants or either of them, or by reason of the conduct of the defendants or either of them.

"5. Affiant further denies that the defendants or either of them are indebted to the plaintiff in any sum whatsoever."

There is no dispute as to the facts. Charles Ubowich, the father of plaintiff, died December 26, 1927, and his will was probated in the probate court of Cook county. It provides, *inter alia,* as follows:

"Second. . . . I give, devise and bequeath . . . to my daughter, Stella Edwards formerly of 3101–28th Ave., Tampa, Florida, One Thousand ($1,000.00) Dollars, 3rd to my son, Alex M. Uborwich, address unknown, One Thousand ($1,000.00) Dollars, if said son cannot be found within five (5) years money is to go to my daughter Stella Edwards."

Plaintiff testified that he first learned of the death of his father in April, 1933; that he first heard that the check had been paid, the last part of April or the first part of May, 1933; that he first saw it in the county treasurer's office in May, 1933; that he did not sign his name on the back of the check nor authorize or permit anybody to put his name thereon; that he does not know F. F. Roberts, whose name appears on the check; that he never presented the check to either defendant and never received any sum of money in any manner through the check. The check was deposited by one F. F. Roberts in his savings account in defendant bank. On the back of the check at that time were the indorsements "Alex M. Uborwich" and "F. F. Roberts." Defendant sent the check to the drawee bank, the First Union Trust and Savings Bank, for collection, where it was paid. After Roberts received credit for the $1,000 in his account he, within a few

days, withdrew the funds, save five dollars. On January 25, 1932, the following order was entered in the probate court of Cook county:

"IN THE MATTER OF THE ESTATE OF
CHARLES UBORWICH, DECEASED

"The petition of Alex M. Uborwich having been filed herein, setting forth that said petitioner is the son of Charles Uborwich, deceased, as shown by the Table of Heirship entered January 7, 1928, and it appearing to the Court that the sum of One Thousand Dollars has been deposited to the credit of Alex M. Uborwich with the County Treasurer of Cook County, Illinois, subject to the further order of this Court;

"It is therefore ordered, directed and decreed that the County Treasurer of Cook County, Illinois, pay over to said Alex M. Uborwich, said funds so deposited with said County Treasurer to be held for said Alex M. Uborwich under the order of this Court entered May 16, 1929, upon production to said County Treasurer of Cook County, Illinois, of a certified copy of this order."

Plaintiff testified that he did not file the petition. Who did file it does not appear. The assistant county treasurer testified that the check of the county treasurer "was issued for his (plaintiff's) share of the estate." The evidence does not show who obtained the check from the county treasurer, nor how it was obtained, nor who indorsed plaintiff's name on the back thereof.

Defendant (appellant) states its theory as follows:

". . . That the plaintiff did not allege in his statement of claim, nor did he prove on the trial, that the check was delivered to and received by him in accordance with the law with respect to the delivery of negotiable instruments; that the plaintiff, never having received the check, had no interest therein, and that, therefore, it was impossible for the defendant, The Northern Trust Company, to be liable to the plaintiff in an action of trover; that the order of the Probate

Court of Cook County was obtained by fraud as shown by the plaintiff's own evidence, and that because the order was fraudulently obtained it may be collaterally attacked by the defendant, who was a victim of the fraud; that the plaintiff had no right to the funds in question in any event because of the provisions and terms of the Will of Charles Uborwich which was introduced into evidence on behalf of the said defendant; and that the Municipal Court was without the power under the Municipal Court Act to enter a judgment in a fourth class tort action for an amount greater than the sum of One Thousand Dollars ($1000.00), where the excess consisted of interest which accrued after the commencement of the suit."

Plaintiff states his theory as follows:

"(a) The plaintiff's theory is that although the check was never delivered to him, he was the one entitled to it and that by his suit he has ratified the delivery of the check and the collection thereof from the drawee bank, without ratifying the conversion of the proceeds of the check by the collecting bank, which obtained the money on the forged endorsement of the plaintiff's name.

"(b) Plaintiff also contends that the defense of impersonation now sought to be made (that the endorsement of the payee's name was not a forgery, since it is claimed to have been made by an imposter to whom the County Treasurer intended to pay the money) cannot be made successfully because it was not pleaded as a defense in the court below, and because there is no *evidence* nor *presumption* that the County Treasurer intended anyone except the plaintiff to receive the proceeds of the check involved here.

"(c) As to the defendant's contention that it can sit in review of the County Treasurer's issuance of the check, to the order of the plaintiff, pursuant to an order of the Probate Court, plaintiff contends that except that this evidence identifies the plaintiff as the

one intended to receive the check, evidence of the Probate Court order, the will of plaintiff's father, and the other steps occurring before the check was issued are wholly immaterial here. A collecting bank that converts the proceeds of a check certainly cannot excuse its conduct by denying the right of the payee to receive the payment from the drawer. This is a matter of no concern to the collecting bank, for whatever the reason or the consideration for the issuance of the check by the drawer to the payee, if the drawer is satisfied to issue the check, the drawee bank or a collecting bank or others dealing with the check must be satisfied.

"(d) Lastly, the plaintiff admits that the judgment in the present case is larger than permitted in a fourth class case in the Municipal Court of Chicago. However, since the passage of the 1931 amendment to Section 2 of the Municipal Court act (L. 1931, p. 420) permitting the transfer of cases from the fourth to the first class, this error in the present case is procedural —not jurisdictional—and is not available to the defendant because not raised at any time in the trial court. Had an objection that the amount of the judgment exceeded the permissible limit of a fourth class case been made in the court below the trial judge has certified that he 'would have entered an order . . . changing this case from one of the fourth class to one of the first class.' "

As to defendant's contention that plaintiff, because he never received the check, had no interest therein, and that, therefore, defendant is not liable to him, it is sufficient to say that the law seems to be settled that the bringing of this suit, one in trover for conversion, by plaintiff, is a ratification of the delivery of the check to the unknown recipient for the benefit of plaintiff. (See *Crisp v. State Bank of Rolla,* 32 N. D. 263, 268–9; *Dodge v. National Exchange Bank,* 20 Ohio St.

234, 249, 250; id., 30 Ohio St. 1, 6, 7; *Pickle v. Muse,* 88 Tenn. 380; *Farmer v. Bank,* 100 Tenn. 187; *Allen v. Mendelsohn & Son,* 207 Ala. 527, 528; *Shaffer v. McKee,* 19 Ohio St. 526; *Indiana Nat. Bank v. Holtsclaw,* 98 Ind. 85.) Upon the oral argument in this court defendant argued that to permit plaintiff to urge the ratification theory of the law would be to permit him to ratify a criminal act, and that the law never permits anyone to ratify a criminal act. The answer to this contention is that plaintiff, by ratifying the delivery does not ratify the forged indorsement upon the check. If this contention of defendant were to prevail it would follow that the cases we have cited were erroneously decided. Several of them refer to the point now made. In *Crisp v. State Bank of Rolla* the court said (p. 269):

"So, too, it would seem that a person to whom a check is sent by mail, and which check is intercepted and cashed with a fraudulent indorsement thereon by a third party, may ratify the delivery without ratifying the forged indorsement."

In *Dodge v. National Exchange Bank, supra* (20 Ohio St. 234), the court said (p. 249):

"The effect of the ratification was to make the check the property of the plaintiff; but he did not thereby impliedly authorize the indorsement of the check."

Defendant had no information that the check had not been delivered to plaintiff and it did nothing in reference to the check that it would not have done had it been actually delivered to plaintiff. Nor is it harmed by being required to treat the check *in law* as having been delivered to plaintiff, since it so treated the check *in fact.* As stated in *Crisp v. State Bank of Rolla, supra* (p. 270):

"The bank is not prejudiced by this subsequent ratification, for it dealt with the check as the property of the complainant, and undertook to pay to him or his order. *The effect of this ratification is simply to make*

*the check the property of the complainant. It does not ratify the collection of the check* by one whose act in receiving it is subsequently ratified, *and agency to receive a check payable to order implies no authority to indorse it in the name of the payee,* or to collect it without such indorsement. In the case of *Dodge v. National Exch. Bank (supra)* a certificate of indebtedness by the government to Dodge was remitted by mail to the paymaster for a check. The mail was robbed, and the certificate presented by the thief to the paymaster, and a check demanded. The latter, without requiring proof of the identity of the holder of the certificate, issued a check payable to Dodge or order, and took up the certificate. The indorsement of Dodge was forged and the check paid. Subsequently Dodge sued the bank and recovered, the court holding that he might ratify the taking of the check for the certificate, and sue upon it as an accepted check.''

Defendant cites cases where there had been no delivery to anyone by the drawer, and the decisions are based upon the principle that delivery is essential to the binding force of a check as a contract. None of the cases cited by defendant in support of its claim as to the effect of nondelivery to plaintiff is a trover suit by a payee against a collecting bank. In the instant case the county treasurer delivered the check to someone, and it was issued for plaintiff's share of the estate. Under such circumstances plaintiff may ratify the delivery and sue for the conversion of the proceeds of the check.

As to defendant's second contention, that ''banks are not liable for paying money to an impostor on a check which the impostor has obtained from a drawer of a check by deceiving the drawer,'' it is sufficient to say, in answer thereto, that such a defense was not interposed in defendant's affidavit of merits, and under the rules of the municipal court in force on the date when the affidavit was filed, all defenses must be

pleaded. Another reason against the contention is that the doctrine invoked by defendant is not applicable where the payee sues the bank. None of the cases cited by defendant is applicable to the instant suit. In considering certain cases cited by defendant it is necessary to remember that there is absolutely no evidence that the county treasurer delivered the check to an impostor with the intention that the impostor should receive the proceeds of the check, or even that the person who received it indorsed it or banked it. The money held by the drawer, county treasurer, was held by him under "An Act to provide for the disposal of unclaimed moneys in the hands of administrators and executors," Cahill's Ill. Rev. St. ch. 3, ¶¶ 141 and 142, which read as follows:

"Par. 141. Unclaimed money to be deposited.) Section 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly,* That when any administrator or executor shall have made final settlement with the county court, it shall be the duty of the court to order said administrator or executor to deposit with the county treasurer such moneys as he may have belonging to any non-resident or unknown heir or claimant, taking his receipt therefor and have the same filed at the office of the county clerk where such settlement has been made.

"Par. 142. How obtained after deposit.) Sec. 2. When money shall be deposited as aforesaid, the person or persons entitled to the same may at any time apply to the court making said order and obtain the same upon making satisfactory proof to the court of his, her or their right thereto."

Plaintiff was an heir of his deceased father and a legatee of a. $1,000 legacy under the will. Someone, other than plaintiff, filed the petition in the probate court and obtained the order which recites that the sum of $1,000 had been deposited to the credit of Alex M. Uborwich with the county treasurer of Cook county,

subject to the further order of the court, and orders that the county treasurer pay over to Alex M. Uborwich "said funds so deposited with said County Treasurer to be held for said Alex M. Uborwich under the order of this Court entered May 16, 1929, upon the production to said County Treasurer of Cook County, Illinois, of a certified copy of this order." Who filed the petition, who delivered the certified copy of the order to the county treasurer, and what occurred at the time of delivery, does not appear. The check, upon its face, shows the following: "In Payment of Estates of Heirs Share of Estate of Charles Uborwich Pay to the Order of Alex M. Uborwich $1,000.00." On the back of the check the county treasurer stamped the following inscription: "Pay Only To Within Named Payee." The evidence does not warrant the argument of defendant that someone identified himself to the county treasurer as the plaintiff in order to obtain the check. Indeed, the evidence does not show whether the check was delivered by hand or by mail. Upon the face of the probate court order appeared the following in handwriting: "Mail check to Alex M. Uborwich, 3534 Olive St., St. Louis, Mo.," but upon objection by defendant this writing was not admitted in evidence. Defendant concedes that the evidence fails to show that F. F. Roberts was the forger or the person who received the check from the county treasurer. It is a reasonable inference from the evidence that Roberts opened the savings account for the purpose of utilizing it as a means to obtain the money on the forged check, for within fifteen days after the account was opened he had withdrawn all of the money obtained upon the check, save five dollars. The check shows upon its face the purposes for which it was issued, and the stamped inscription upon the back was a direction by the county treasurer, as drawer of the check, that the proceeds of the check should be payable only to plaintiff. Still, the defendant accepted as a guaranty of

genuineness of the payee's indorsement, the indorsement of Roberts, with whom it had, apparently, no prior dealings. The argument of defendant that it exercised all due care in the transaction, even if the question of care were material to a determination of this cause, would not appeal to us.

As to the contention of defendant that "the plaintiff failed to satisfy the conditions of his father's last will and testament and, therefore, is not entitled to the sum sued for as a legatee under this will," it would seem to be a sufficient answer thereto to say that it does not concern defendant whether, as between plaintiff and his sister, plaintiff is entitled to the $1,000 legacy. The argument, in effect, attacks the propriety of the order of the probate court in a collateral proceeding and calls upon us to hold that plaintiff was not entitled under the will to the $1,000 and that the probate court should not have entered the order. This we cannot do. In support of its contention that we have a right to inquire into the question as to whether or not plaintiff had a right to the $1,000, defendant cites *Green v. Hutsonville School District,* 356 Ill. 216, which holds that where a judgment is procured through fraud and collusion for the purpose of defrauding a third person, such third person may show collaterally the fraud and collusion by which the judgment was obtained and escape the burdens and injuries thrust upon him by the judgment. In that case a judgment against the school district was obtained by consent and collusion of the parties without the district interposing an obvious and good defense, which it was its duty to interpose. A bill was filed in behalf of the taxpayers in the school district to restrain the extension and collection of certain taxes for the payment of bonds alleged to have been obtained through fraud and collusion, and it was held that the parties to the suit had the right to show collaterally the fraud and collusion by which the judgment was obtained and thus

escape the burdens and injuries imposed upon them by the fraudulent and collusive judgment. That case and similar ones cited have no application to the instant case, as it is idle to argue, under the evidence, that the order of the probate court was obtained by collusion of plaintiff for the purpose of defrauding defendant. Indeed, there is nothing in the record upon which can be reasonably based the argument that the order of the probate court was not a proper one. Defendant did not introduce a complete record of the proceedings in that court and for aught that appears here the order may have been based upon some affirmative action by Stella Edwards, the sister of plaintiff. It does appear that the probate court, on May 16, 1929, approximately two and one-half years prior to the issuance of the check, had found that plaintiff was entitled to the $1,000. Stella Edwards is the only one who could complain of such finding, and it appears that she sat by the side of plaintiff during the trial of this case. Defendant dealt with the check as the property of plaintiff and the question as to whether or not plaintiff or his sister was entitled to the $1,000 played absolutely no part in the conduct of defendant. Had the order of the probate court contained the name of Stella Edwards instead of plaintiff's, and had the check of the county treasurer made her the payee, the result to defendant would have been the same had Roberts obtained possession of the check and deposited it to his account.

Defendant's last point is that "the judgment for $1,112.50 and costs of suit was improperly entered, because, in the Municipal Court of Chicago, the trial judge is without the authority in actions of the 4th class to render judgment for an amount in excess of $1,000, unless the excess consists of interest or charges which accrued after the commencement of the suit." Defendant calls our attention to the fact that it appears from the written opinion of the trial judge that

the judgment is in excess of $1,000, because plaintiff was allowed interest from the date of conversion, February 8, 1932. Section 2 of the Chicago Municipal Court Act, Cahill's Ill. Rev. St. 1933, ch. 37, ¶ 390, provides that in cases of the fourth class the amount to be recovered is limited to $1,000, save where the excess over $1,000 consists of interest, damages, or costs accrued after the commencement of the action. An amendment to that section, passed in 1931, provides:

"A case commenced as one of the first class may be changed to one of the fourth class, or a case commenced as one of the fourth class may be changed to one of the first class, upon such terms as to costs and notice to the parties as may be provided for by the rules of the court."

In the certificate of the trial judge appears the following:

"I hereby certify that at no time prior to judgment herein nor at the time judgment was entered herein did the defendant, Northern Trust Company, object to the amount of said judgment on the ground that the amount of said judgment was in excess of that permissible in a case of the fourth class in this Court. Had such objection been made, I would have entered an order, as permitted by Section 2 of 'An Act in relation to a municipal court in the city of Chicago,' as amended in 1931 (L. 1931—p. 420), changing this case from one of the fourth class to one of the first class."

In view of this attitude of defendant in the trial court it should not be heard to raise here the instant contention. There is some force in the argument of plaintiff that because of the amendment of 1931 the failure of the trial court to change the case to one of the first class was, at most, a procedural error rather than a jurisdictional one. In any event, the argument of defendant that because the judgment improperly allows interest from the date of the conversion until the date of the commencement of the suit, amounting

to $87.50, it must be reversed *in toto*, is without merit. The trial court had jurisdiction of the persons and the subject matter of the suit, and the error committed was in allowing the aforesaid interest. Defendant does not ask us to oblige plaintiff to remit $87.50 from the judgment, but insists that the court was without jurisdiction to enter the judgment and that, therefore, we must reverse it *in toto*.

The judgment of the municipal court of Chicago will be affirmed.

*Judgment affirmed.*

SULLIVAN and FRIEND, JJ., concur.