[Civ. No. 12783.   Second Appellate District, Division Two.—January 22, 1941.]

RAY SCHWEITZER, Respondent, v. BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION (a National Banking Association), Appellant.

538

Louis Ferrari, Edmund Nelson and G. L. Berrey for Appellant.

J. H. Sims and M. H. Wallbert for Respondent.

MOORE, P. J.—Plaintiff as assignee of one E. Anderson sued to recover damages from appellant bank for the alleged conversion of sixteen checks. The complaint contains thirty-three counts, sixteen of which allege conversion as a result of unauthorized endorsements, count 17 is for money had and received, while the remaining sixteen counts allege conversion by means of forgeries of one Myer Glazer, a codefendant. Defendant bank has appealed from a judgment entered in favor of the plaintiff for the face value of all of the checks.

It appears that a woman whose name is E. Anderson was the owner of a supply of scrap iron stored in the yard of plaintiff, who was a scrap iron dealer. Plaintiff had general authority from Mrs. Anderson to sell the iron and to receive the proceeds. Pursuant to such instructions plaintiff directed Glazer to remove the iron, sell it and to collect the proceeds of such sales. Glazer thereafter presented himself on a series of occasions with loads of scrap iron at the offices of the Ace Foundry Company, to which he made sales. At no time did he disclose that he was acting as the agent of Mrs. Anderson, but assumed the role of owner in making each sale and at all times represented himself as "E. Anderson". Relying upon Glazer's representations that he was the owner of the iron, the foundry company drew its several checks upon appellant payable to "E. Anderson" and delivered them to Glazer. Not at the time of any one of the sixteen purchases made by the foundry company from Glazer did the company gain any knowledge that Glazer was sailing under false colors in calling himself "Anderson". All of the checks were endorsed "E. Anderson" by the hand of Glazer without any knowledge of Mrs. Anderson, whose claim is represented by the plaintiff.

When Glazer presented the first check to the bank to be cashed, for information as to his identity the bank telephoned the office of the foundry company and was then assured from the description reported by the bank that the payee named in the check was the identical person at that time in the office of the bank demanding payment, and that the check had been regularly issued by the foundry company. Subsequently the remainder of the checks were cashed by the bank's paying the money directly to Glazer or by payment through the clearing house to the bank at which he had made deposits. Having ascertained that her scrap iron had been sold and that Glazer had secured the money by the methods above de-

scribed, E. Anderson assigned her claim against the bank to plaintiff.

The primary contention made by appellant is that Glazer was an impostor using the name of "E. Anderson" to effectuate his transactions; that he was actually the payee intended by the foundry company in each of the checks issued in that name and that therefore Mrs. Anderson was never intended to be the payee and consequently had no interest in the checks as against the bank or as against the foundry.

The impostor rule as applied to negotiable instruments is understood throughout the states of the Union. The weight of decision in the United States and the doctrine which is followed in California is that where a check is delivered to an impostor as payee and the drawer believes that the impostor is the person upon whose endorsement it will be paid, the endorsement by such impostor in the name which he is using to impersonate another is not a forgery. The reason for the rule is that the drawer intended the check to be endorsed by the identical person to whom it was delivered. Under such circumstances the drawee bank is to be protected when it has paid the check upon such endorsement. (*Ryan* v. *Bank of Italy etc. Assn.*, 106 Cal. App. 690 [289 Pac. 863]; *Security-First National Bank* v. *United States*, 103 Fed. (2d) 188; *United States* v. *National Exchange Bank*, 45 Fed. 163; *Sherman* v. *Corn Exchange Bank*, 91 App. Div. 84 [86 N. Y. Supp. 341]; *Cohen* v. *Lincoln Savings Bank of Brooklyn*, 275 N. Y. 399 [10 N. E. (2d) 457, 112 A. L. R. 1424]. Also see 22 A. L. R. 1228, 52 A. L. R. 1326, and 112 A. L. R. 1435.) The soundness of the rule obtains in the fact that the money has actually been paid to the person for whom it was really intended. Because another person might bear the very name assumed by the impostor and might have some contractual relationships with the impostor does not subject to a loss the drawee bank when it has paid the check to the person intended as the payee. Merely because a person may be designated by his name for ordinary practical purposes, his name does not become a more certain or accurate means of identification than his own visible presence with its distinct features. If a buyer is deceived as to the true name of the individual with whom he deals, but at the same time he intends to purchase from the man who commits the deception, he there identifies the seller by sight and hearing. If he thinks the seller's name is X and draws a check in his favor

intending to designate him as the person to whom he desires to pay his money, and delivers the check to X, the drawee bank, in paying the proceeds of the check to X carries out the purpose of the drawer. (*Cohen* v. *Lincoln Savings Bank of Brooklyn, supra.*) This is exactly what occurred when the foundry company delivered its check to Glazer believing him to be E. Anderson. Moreover, there is no evidence that the foundry company had any knowledge that "E. Anderson" was the name of a woman who owned iron which had been taken from plaintiff's yard to be sold. Glazer might have assumed the name of Marco Polo with the same results to the bank.

While conceding the virtue of the impostor rule plaintiff insists that its application should be limited solely to controversies between the drawer and the drawee of a check. (*Ubowich* v. *Northern Trust Co.*, 281 Ill. App. 109.) But in that case plaintiff sued both the collecting and drawee banks for the conversion of a check payable to plaintiff. That check had been drawn by the county clerk to the order of plaintiff in payment of his distributive share of an estate. In some mysterious manner the check found its way into the hands of a stranger to the estate, was deposited with the collecting bank and was paid by the drawee bank upon a forged endorsement. Judgment was entered against the collecting bank only. The comments of the court in that case with respect to the impostor doctrine, which are here relied upon by plaintiff, are clearly *dictum*, for at page 119 of the decision the court states that "there is absolutely no evidence that the county treasurer delivered the check to an impostor with the intention that the impostor should receive the proceeds of the check, or even that the person who received it endorsed it or banked it".

The general rule is that the true owner and payee of a check has an action against the drawee bank for the conversion of a check which was paid upon a forged or unauthorized endorsement. But this rule is to be limited by the very authorities which support it. (*Spaulding* v. *First Nat. Bank,* 210 App. Div. 216 [205 N. Y. Supp. 492] ; *Graves* v. *American Exchange Bank,* 17 N. Y. 205; *Szwento, etc.,* v. *Manhattan Sav. Inst.,* 178 App. Div. 57 [164 N. Y. Supp. 498] ; *Byrne* v. *Dennis,* 303 Pa. 72 [154 Atl. 123] ; *Kentucky etc. Bank of Dunavan,* 205 Ky. 801 [266 S. W. 667] ; *Bentley etc. Co.* v. *La Salle Street etc. Bank,* 197 Ill. App. 322; *State* v. *First*

*Nat. Bank,* 38 N. M. 225 [30 Pac. (2d) 728], and others.) In none of the cited cases did the drawer of the check deliver it to an impostor representing himself to be the true payee with the intention that the impostor receive the proceeds of the check, as was the case when the foundry delivered the check to Glazer. In each of those cases the situation involved a check *payable to plaintiff, who was either known to or identified by the drawer,* with the intention that the payee named in the check should receive its proceeds. In each instance the drawee bank paid the check upon the *forged* endorsement of a stranger or upon the unauthorized endorsement of an agent of the payee. In some cases the wrongdoer who cashed the check was the payee's agent but without authority to cash the check; in other cases the wrongdoer represented himself as the agent of the payee although wholly unauthorized so to do. Moreover the facts which constitute the bases of the last mentioned authorities are distinguished from the facts in the case at bar in that in each of those cases *the drawer had plaintiff and not some other person in mind when the check was drawn.* In other words it was intended by the drawer that the plaintiff should receive the proceeds of the check.

In those cases where the agent or pretending agent obtained the check before it was actually delivered to the plaintiff, delivery to the plaintiff was established on the theory that, in filing suit, plaintiff ratified delivery to such agent as having been done on behalf of plaintiff. But a ratification can occur only by approving the act of the agent after the agent performs openly on behalf of his principal and not for himself. It is the subsequent adoption by one claiming benefits of an act which, without authority, another has voluntarily done while ostensibly acting as agent of him who affirms the act and who had the power to confer authority. (Civ. Code, sec. 2312; *Watkins* v. *Clemmer,* 129 Cal. App. 567 [19 Pac. (2d) 303]; Restatement of the Law of Agency, secs. 82, 83, 84 and 85.) The record definitely establishes that it was not the intention of the foundry company, in issuing any check, that Mrs. Anderson should receive its proceeds.

The payee of a check is the individual who is intended by the drawer to be the recipient of the money. Even though another person bear the same name, if he be not the one intended by the drawer to receive the money, he has no right or title to the check and he cannot endorse it or transfer the

title of it. (*Cohen* v. *Lincoln Sav. Bank of Brooklyn, supra*; *Hartford Accident etc. Co.* v. *Middletown Nat. Bank*, 126 Conn. 179 [10 Atl. (2d) 604].) Any negotiable instrument not payable to bearer must be payable to a determinate person or persons. When the maker intends a particular person to be the payee, then such person, although designated by a fictitious name, and even though the maker was induced by the deceit of such person to designate him as payee, still such deceiver is the actual payee and has the authority to endorse the instrument. (*Halsey* v. *Bank of New York & Trust Co.*, 270 N. Y. 134 [200 N. E. 671].)

█ It follows that Mrs. E. Anderson was neither the payee nor the owner of the check, and never had a title which could be transferred to plaintiff. Glazer's endorsement was not a forgery, for he was the payee intended by the drawer. (*Ryan* v. *Bank of Italy, supra*; *Cohen* v. *Lincoln Savings Bank of Brooklyn, supra*.)

█ It cannot be said that by filing suit either plaintiff or his assignor ratified the delivery of the checks to Glazer. That gentleman did not pretend to act on behalf of Mrs. Anderson or of any other person, but in each instance he dealt with the foundry company solely on his own behalf. There was, therefore, nothing for Mrs. Anderson or the plaintiff to ratify, and under such circumstances there can be no ratification. (*Watkins* v. *Clemmer, supra*.) While it is true that the court made a finding that Glazer was the agent of Anderson, yet in no sense does this improve her status with respect to the bank. No finding was made that Glazer received the checks as the agent of Anderson and if there had been such a finding it would be without support in the evidence.

Contrary to plaintiff's contention it cannot be said that the impersonation doctrine applies only as between the drawer and drawee. Whatever rights Mrs. Anderson might have acquired in the checks must necessarily have been derived from the drawer's intention to pay the money to her. Consequently, if the foundry was bound by its delivery of the checks to Glazer, the impostor who cashed them, there is no logical basis upon which Mrs. Anderson, a total stranger to both the foundry and the bank, can recover against the latter. The foundry company is bound by the transaction between the bank and Glazer, because when the bank cashed the check for the impostor it was merely carrying out the intention of

the foundry that the proceeds were to be received by Glazer. Because Mrs. Anderson has the same name as that used by Glazer in effecting his sales and collections does not improve her situation as against the bank. The check was intended for the party who called at the foundry and made his sale. While a name may serve to identify an individual, yet if the check was received by the identical person to whom the drawer intended to deliver it, and was by that person endorsed with the name to which it was made payable, the bank owed no further obligation with reference to it. (*Hartford Accident etc. Co.* v. *Middletown Nat. Bank, supra,* at page 189.)

From the foregoing it is clear that plaintiff is in no position to recover in an action for conversion. In such actions the gist of the right of recovery is derived from ownership with the right of possession, or from actual possession at the time of the alleged conversion. (*McCoy* v. *Northwestern C. & S. Co.*, 3 Cal. App. (2d) 534 [39 Pac. (2d) 864] ; *General Motors A. Corp.* v. *Dallas*, 198 Cal. 365 [245 Pac. 184].) While plaintiff proved ownership of the scrap iron in Mrs. Anderson, yet he failed to prove ownership or possession or the right of possession of the checks as against the bank. Merely because Glazer appropriated the iron and delivered it to an unsuspecting person representing himself to be its owner, and assuming a fictitious name withal, does not give rise to a cause of action in favor of Mrs. Anderson against the bank which paid the money, as directed by its depositor, to an impostor. Since under the circumstances an action in *assumpsit* will not lie (*First Nat. Bank* v. *Whitman*, 94 U. S. 343 [24 L. Ed. 229]) the judgment rendered cannot be supported by the court for moneys had and received.

Plaintiff contends further that defendant is estopped to plead the defense of impersonation. This contention is based upon the fact that more than a month prior to the first call of Glazer plaintiff visited the bank and undertook to cash a check drawn by the Ace Foundry Company in favor of E. Anderson. On that occasion the teller declined to cash the check and referred plaintiff to the manager. At that time plaintiff informed the manager that "E. Anderson" was a woman for whom plaintiff was agent. But there is no evidence that the branch manager's attention was directed to the fact that the Ace Foundry Company was the drawer of the check. The conversation related solely to the identity of the payee of that particular check. There is nothing in the

name "Anderson" or in the letter "E" to make them severally or jointly a warning against impostors. Both are quite commonly found on books of account and in directories. There was therefore nothing in the conversation between plaintiff and the bank manager to put appellant upon notice that subsequent checks drawn against the account of the Ace Foundry Company payable to E. Anderson would be payable only to a woman. Moreover, the bank was actually informed by the foundry company, at the time of Mr. Glazer's first call, that "E. Anderson" was a *man* of Glazer's description. In view of the knowledge imparted to the bank when Glazer presented his first check, and while he was in the bank's office, it must be held that any prior information imparted to the bank that a woman by the name of E. Anderson dwelled among mortals would not create an estoppel.

Plaintiff's contention that the answer was so defective that it failed to raise any issue, in that it failed to allege impersonation affirmatively, is untenable. The complaint alleged plaintiff's ownership of, and the right of possession to, the checks. The answer denied these allegations. This created an issue of fact, and it was not necessary to allege affirmatively the defense of impersonation. Also since all the facts comprising the basis of the estoppel were received in evidence, in support of plaintiff's claim of ownership, and upon his contention that Glazer had no authority to endorse the checks, defendant was not required in its pleadings to "anticipate such other contentions as the plaintiff may seek to rely upon" when plaintiff's main reliance has failed her. This is especially true where such other contentions do not appear upon the face of the complaint. (*Kenny* v. *Christianson*, 200 Cal. 419, 424 [253 Pac. 715, 717].)

The judgment is reversed with directions to the trial court to enter judgment in favor of appellant.

McComb, J., concurred.

Wood, J., concurred in the judgment of reversal.