INTERNATIONAL AIRCRAFT TRADING Co., INC., Appellant, *v.* MANU-FACTURERS TRUST COMPANY, Appellant and Respondent, and IRVING TRUST COMPANY, Respondent.

Argued January 8, 1948; decided April 22, 1948.

*Louis Okin* for plaintiff-appellant.   I. There is no basis for even an inference that plaintiff intended any person or " entity " other than the named payee to receive the proceeds of the check.   (*Lowendahl* v. *Baltimore & Ohio R. R. Co.,* 247 App. Div. 144, 272 N. Y. 360; *Riley* v. *Agwilines, Inc.,* 296 N. Y. 402; *Moers* v. *Moers,* 229 N. Y. 294; *Wenig* v. *Glens Falls Ind.*

*Co.*, 294 N. Y. 195; *Kerfoot* v. *Kelley,* 294 N. Y. 288.) II. The corporation had neither *de facto* nor *de jure* existence on December 17 and December 18, 1941, when the check was issued and paid; it had not been organized and was nonexistent. (Thompson, Law of Corporations, Vol. 1, §§ 249, 259; Paton's Digest [Banking], Vol. 2, p. 1395; Fletcher, Cyclopedia Corporations, Vol. 8, § 3820; *Whiting & Sons Co.* v. *Barton,* 204 Mass. 169; *Falls Rubber Co. of Akron, Inc.,* v. *Applebaum,* 286 Mass. 18; *Von Lengerke* v. *City of New York,* 150 App. Div. 98, 211 N. Y. 558; *Perrine* v. *Levin,* 68 Misc. 327; *Stevens* v. *Episcopal Church History Co.,* 140 App. Div. 570.) III. The payment by the drawee of the check made payable to a fictitious and nonexistent corporation was improper; the drawee could not charge such improper payment against plaintiff's account. (*Shipman* v. *Bank of State of N. Y.,* 126 N. Y. 318; *Baldwin's Bank* v. *Smith,* 215 N. Y. 76; *Sundial Constr. Co.* v. *Liberty Bank,* 277 N. Y. 137; *Cohen* v. *Lincoln Sav. Bank,* 275 N. Y. 399; *Swift & Co.* v. *Bankers Trust Co.,* 280 N. Y. 135; *American Express Co.* v. *Peoples Sav. Bank,* 192 Iowa 366; *United Cigar Stores Co.* v. *American Raw Silk Co.,* 184 App. Div. 217, 229 N. Y. 532.) IV. The burden of ascertaining the identity and existence of the payee has been erroneously shifted from the ultimate indorser to the maker. (*Cohen* v. *Lincoln Sav. Bank,* 275 N. Y. 399; *Franklin Square Nat. Bank* v. *Great Atlantic Bldg. Material Supply Corp.,* 186 Misc. 524, 270 App. Div. 930, 296 N. Y. 644.) V. The drawee's first affirmative defense of ratification and confirmation of the payment of the check by the corporation, and use of the proceeds of the check " for and on behalf of " the corporation is legally insufficient; there is no proof to support this alleged defense. (*Mount Vernon Trust Co.* v. *Federal Reserve Bank of N. Y.,* 267 App. Div. 882, 293 N. Y. 654; *Leather Manufacturers Bank* v. *Merchants Bank,* 128 U. S. 26; *United States* v. *National Exch. Bank,* 214 U. S. 302; *Fourth Nat. Bank* v. *Gainesville Nat. Bank,* 80 F. 2d 490.) VI. The drawee's second affirmative defense that the plaintiff ratified and confirmed the payment of the check is legally insufficient; it was not established on the trial. (*Falls Rubber Co. of Akron, Inc.,* v. *Applebaum,* 286 Mass. 18; *Puro Filter Corp.* v. *Trembly,* 266 App. Div. 750; *Antun* v. *Masholie-*

*Salvator Co.*, 180 Misc. 106, 266 App. Div. 852.) VII. Furthermore, it is uncontradicted that plaintiff never received any of the cartridges which it was supposed to get, and has never received any part of the $5,000 represented by the check. (*City of New York* v. *Bronx County Trust Co.*, 261 N. Y. 64; *Davies* v. *Stumpf*, 179 Misc. 401, 266 App. Div. 732.) VIII. The mere fact that plaintiff knew and dealt with only three individuals as representing the purported corporation does not furnish a basis for even an inference that plaintiff intended these three individuals to be the payees and receive the proceeds of a check made to the order of that corporation. (*Hull* v. *Littauer*, 162 N. Y. 569; *Colby* v. *Wildenstein*, 258 App. Div. 628; *Chapin-Owen Co.* v. *Yeoman*, 233 App. Div. 492; *Stearns* v. *Schenectady Day Nursery*, 262 App. Div. 638, 288 N. Y. 574.)

*David S. Konheim, Nathan Waxman* and *John J. O'Connor* for Manufacturers Trust Company, appellant and respondent, and for Irving Trust Company, respondent. I. Plaintiff's check was paid to the intended payee thereof. (*Hartford Accident & Ind. Co.* v. *Bank of New York*, 261 App. Div. 278; *Cohen* v. *Lincoln Sav. Bank*, 275 N. Y. 399; *Halsey* v. *Bank of New York & Trust Co.*, 270 N. Y. 134; *First Nat. Bank* v. *American Exch. Nat. Bank*, 170 N. Y. 88; *Sherman* v. *Corn Exch. Bank*, 91 App. Div. 84; *American Surety Co. of N. Y.* v. *Empire Trust Co.*, 262 N. Y. 140, 237 App. Div. 522; *Powell* v. *Powell*, 71 N. Y. 71; *Tousey* v. *Hastings*, 194 N. Y. 79; *Ramsay* v. *Miller*, 202 N. Y. 72; *Morgan* v. *Bon Bon Co.*, 222 N. Y. 22.) II. Plaintiff has ratified the payment of the check. (*Schenck* v. *State Line Tel. Co.*, 238 N. Y. 308; *Pollitz* v. *Wabash R. R. Co.*, 207 N. Y. 113; *Rothschild* v. *Title Guar. & Trust Co.*, 204 N. Y. 458.)

Fuld, J. International Aircraft Trading Co., Inc., sued Manufacturers Trust Company for $5,000, the amount of a check, drawn on that bank, which plaintiff claimed was improperly honored and charged against its account. Manufacturers impleaded Irving Trust Company which had presented the check for payment. After trial without a jury, the complaint and the cross complaint were both dismissed on the merits; that judgment has been unanimously affirmed, and the appeal is here by our permission.

Early in December, 1941, plaintiff was in the market to purchase cartridges for export to Ecuador, and, through its president, negotiated for them with three men named Hidden, Ronan and Zelkin who represented themselves as officers of a Massachusetts corporation, the Lowell Cartridge Corporation. During the dealings, plaintiff received correspondence bearing the letterhead " Lowell Cartridge Corp., 95 Bridge Street, Lowell, Mass.", signed by Hidden as president, and was given a performance bond executed in the name of Lowell, described as " a Corporation of the State of Massachusetts * * * as principal ". The negotiations ripened into a contract, dated December 17, 1941; plaintiff was to purchase 500,000 cartridges from Lowell for $22,500, of which $5,000 was to be paid on the signing of the agreement. Plaintiff thereupon issued the check in question for $5,000, with the " Lowell Cartridge Corporation " named as payee. On the same day — December 17 — an account was opened with Irving Trust Company in the name of Lowell, by deposit of the check without any indorsement. On the following day, the unindorsed check — bearing a notation by Irving that it had been credited to the named payee and that " endorsements " were guaranteed — was presented to Manufacturers, which paid it and charged plaintiff's account with $5,000.

In reality, there was no " Lowell Cartridge Corporation " in existence while the negotiations were being carried on or when the check was presented or paid. It was not until December 23 — several days after the check had been paid — that incorporators met to organize Lowell. Several more days elapsed before they filed articles of incorporation, and it was not until January 6, 1942, that a certificate of incorporation was issued and made retroactively effective as of December 26. 1941. Lowell, however, never issued any stock or conducted any business.

Irving had neither requested nor received any corporate resolution or other authorization for the creation of the account in Lowell's name. In spite of this, it permitted money to be withdrawn from Lowell's account — in which the check in question was the sole deposit — even before the check had cleared. By December 31, the account was exhausted. No exact record

was kept of the persons who made withdrawals from the account, but some appear to have been made by " Ronan " and " Ronan Associates ".

No cartridges were ever delivered, and, in April, 1945, plaintiff obtained a default judgment against Lowell and its officers in an action against them for breach of contract, fraud, conspiracy, and for the $5,000 realized from its check. Nothing having been collected on the judgment, plaintiff brought the present action.

On these facts, the complaint charges Manufacturers with liability for deducting the amount of the check from plaintiff's deposits with the bank. There is no challenge to the rule that Manufacturers could charge plaintiff's account only in accordance with plaintiff's instructions. (See *Strang* v. *Westchester Co. Nat. Bank,* 235 N. Y. 68; *Seaboard Nat. Bank* v. *Bank of America,* 193 N. Y. 26, 30; *Shipman* v. *Bank of State of N. Y.,* 126 N. Y. 318.) The issue, briefly stated, is whether there was compliance with that rule, considering the circumstances that, both when the check was drawn and when it was paid, the designated payee was — unbeknown to the plaintiff drawer — not in existence.

The check with the nonexistent payee is no stranger to the law. In *Swift & Co.* v. *Bankers Trust Co.* (280 N. Y. 135, 145), this court said of such a check: " If construed in accordance with the law of New York where it was made payable, it constituted an order to pay to a non-existent person; in other words, it was a check without a payee to whom it could be delivered, who could transfer it or who could demand or receive payment. Such a check is a mere scrap of paper creating neither right nor obligation ". On that reasoning, it follows that the check in issue was a legal nullity, not entitled to be honored, and that Manufacturers is liable for charging it against plaintiff's account.

It is evident from the trial court's opinion that a contrary conclusion was believed dictated by the so-called " impostor rule," under which a bank is protected even though an impostor cashes a check, if it was that impostor who, the drawer — deceived " through fraudulent misrepresentation as to his responsibility, character or name " — intended should be " the

real payee '' and should receive the proceeds of the check. (See *Cohen* v. *Lincoln Sav. Bank,* 275 N. Y. 399, 403–404, 406.)

It is not every imposture, however, that serves as a shield to the bank. It is only where the impostor, dealing face to face with the drawer, succeeds in having himself intended as payee, albeit under an alias, that the bank is warranted in paying him. (See *Halsey* v. *Bank of New York & Trust Co.,* 270 N. Y. 134, 139; *First Nat. Bank* v. *American Exch. Nat. Bank,* 170 N. Y. 88; *Sherman* v. *Corn Exch. Bank,* 91 App. Div. 84; see, also, 6 Zollman, Banks and Banking [Perm. ed.], § 3756.) In this type of case, it has been noted, the drawer's intent is dual; he intends (1) that the person before him shall be the recipient of the proceeds of his check and (2) that the person he names as payee will be paid. (See Brannan's Negotiable Instruments Law [5th ed.], p. 331; see, also, *Cohen* v. *Lincoln Sav. Bank, supra,* p. 407.) Since in such a situation the drawer intended that the person with whom he actually dealt be paid the money represented by the check, the courts honor that aspect of his intention and permit the bank to pay the impostor without incurring liability. Where, however, another person, real or fictitious, is intended as the payee, the bank is held liable when it pays the impostor. (See *Strang* v. *Westchester Co. Nat. Bank, supra; Mercantile Nat. Bank* v. *Silverman,* 148 App. Div. 1, affd. 210 N. Y. 567; *United Cigar Stores Co.* v. *American Raw Silk Co.,* 229 N. Y. 532; *American Express Co.* v. *Peoples Sav. Bank,* 192 Iowa 366; cf. *Price* v. *Oswego & Syracuse Ry. Co.,* 50 N. Y. 213.) The *Strang* case (*supra*) is illustrative. An attorney, posing as the agent of one Remsen, a nonexistent client, induced plaintiff to make a loan on the strength of a bond and mortgage covering property allegedly owned by Remsen. The instruments were forgeries; the property actually belonged to the attorney. Plaintiff, deceived, drew a draft to her own order and indorsed it over to Remsen. The impostor then indorsed Remsen's name on the draft and the bank paid him the proceeds. In holding the bank liable to the drawer for the amount of the draft, the court noted that it was not the attorney who was intended to be the payee of the check, but Remsen, the nonexistent client, and pointed out that the bank was responsible in spite of the fact that

the attorney actually owned the property in question. In the course of the opinion, it was said: "A different case would be here if the plaintiff had dealt with Bushnell [the attorney] in the belief that he was Remsen, intending to make payment to the person then before her, though lured into that intention by his assumption of a fictitious name. * * * The plaintiff did not loan her money to Bushnell, content to accept him as a borrower * * *. Undoubtedly, she believed, when she drew her check upon the bank, that Remsen was an owner of the property, and that the mortgage was a valid lien. This belief did not mean that some one else * * * had the right, because he was the owner, to step into the borrower's shoes" (pp. 70–72).

Decision as to whether or not a nonexistent corporate payee has a place within the ambit of the impostor rule, whether that rule can ever be applied where a corporation is named as payee, need not here detain us, for it is clear that plaintiff intended to, and did, contract only with the corporation: in carrying on negotiations with the three individuals, Hidden, Ronan and Zelkin, plaintiff did so solely in their asserted capacity as agents. (See *Strang* v. *Westchester Co. Nat. Bank, supra.*) The circumstance that plaintiff's president dealt with, and knew, only the persons before him fails to impress us. All transactions with a corporation must of necessity be with natural persons, either face to face or otherwise, on behalf of the corporation. More is required on which to base a finding that there was here an intention in fact to treat the individual negotiators as principals, especially since Lowell was named consistently and repeatedly as principal throughout all of the negotiations — in correspondence, in performance bond, in contract and in check. The record before us admits of no other inference than that plaintiff dealt only with the corporation as such and contracted with it alone as principal.

Nor is there here any warrant for disregarding the plaintiff's intent to deal with the corporation on any theory of piercing the veil of the corporate entity. Broadly speaking, that doctrine is invoked to prevent fraud or to achieve equity. (See, e.g., *Halsted* v. *Globe Indemnity Co.,* 258 N. Y. 176, 179; *Jenkins* v. *Moyse,* 254 N. Y. 319, 324; see, also, 1 Fletcher's Cyclo-

pedia Corporations [Perm. ed.], § 41.) It would prevent no fraud and serve no equity in this case to visit the loss upon plaintiff rather than upon the bank. Indeed, the opposite is true, for elementary precautions on the part of Irving would have prevented the consummation of the wrong; the result could not have been accomplished except for its intervening and facilitating conduct.

In short, since Manufacturers paid the proceeds of the check to some one other than the designated and intended payee, that bank is accountable to the drawer for the unauthorized disposition of its funds.

Two further defenses are asserted. It is claimed (1) that withdrawals from the Irving account after Lowell had been incorporated constituted a ratification by Lowell and (2) that suit by plaintiff against Lowell for the proceeds of the check constituted an election of remedies, estopping plaintiff from maintaining the present action. As to the first, it is enough to note that — quite apart from other considerations — there is no evidence that any withdrawal was made either by persons authorized by Lowell or for its corporate purposes. As to the second, we need but observe that there was no inconsistency on plaintiff's part in proceeding first against the corporation in an endeavor to collect from all who might be liable to it. (See *City of New York* v. *Bronx County Trust Co.,* 261 N. Y. 64, 73–74; see, also, Civ. Prac. Act, § 112-a.)

Manufacturers' liability to plaintiff being established, it follows that Irving — as that defendant acknowledges — is answerable to Manufacturers on its cross complaint. (Cf. Negotiable Instruments Law, § 350-c.)

The judgments of the courts below should be reversed and judgment directed in favor of plaintiff upon its complaint against Manufacturers Trust Company in the sum of $5,000, with interest and costs in all courts, and in favor of Manufacturers Trust Company, in like amount, on its cross complaint against the impleaded defendant, Irving Trust Company, with interest and costs in all courts.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, THACHER and DYE, JJ., concur.

**Judgments reversed, etc.**