Nat H. Hentel, J.
In this nonjury action, plaintiff sues the defendants to recover the sum of $1,650 paid to defendants for merchandise and services which defendants allegedly failed to deliver or perform.
The proof submitted on behalf of the plaintiff indicates that the plaintiff met one I. Jay, also known as Israel Jay and Israel Jay Flaum, although these aliases were unknown to him until trial, sometime in December, 1968, by chance. They were strangers to each other. Mr. Jay held himself out to be an interior decorator and offered to furnish the plaintiff’s newly leased and then under-construction apartment at “ ten percent above wholesale costs ”, and that he would “ set up the plaintiff’s whole apartment, hang all the pictures, supply all the required furnishings and services and all that the plaintiff would have to do would be to move in his clothing, books and dishes.”
Mr. Jay gave to the plaintiff his card which reads “ Howard Interiors, Ltd.-Interior Designers and Contractors-Commercial and Residential Interiors ”, and in the lower left hand corner of the business card are merely the words “ Mr. I. Jay,” without any descriptive title.
Subsequently, the plaintiff entered into an agreement which was reduced to writing and dated December 29,1968, on a letterhead entitled “ Howard Interiors, Ltd.” showing the same address and phone number as on the calling card and which was signed by the plaintiff and by 1 ‘ Howard Interiors, Ltd.-I. Jay. ’ ’ There is no description of Mr. Jay’s title or position with Howard Interiors, Ltd., in the signature or in any other place in the agreement; nor is Howard Interiors, Ltd. signed “by” Mr. Jay. Thus, it cannot be determined from these documents whether Mr. Jay is the sole owner of Howard Interiors, Ltd., or is one of its agents, salesmen, or other officer. The agreement reads in part: “ This agreement entered into between Howard Interiors, Ltd. hereinafter called the designer and Mr. Lieblein hereinafter called the client ’ ’. In his amended complaint plaintiff states: “ Upon information and belief, defendant Howard Interiors, Ltd. is a domestic corporation,” and otherwise does not identify Mr. Jay except as a party defendant in the title, of the action.
During the period January 6, 1969 through July 28, 1969, the plaintiff paid to the defendants by four personal checks a total of $1,800 as follows: Check dated January 6,1969, $500; January 17, 1969, $750; February 3, 1969, $300; and July 28, 1969, $250. Bach of the four checks was. made payable to either “ Howard Interiors,” (January 6, 1969) or to “ Howard Interiors, Ltd.” *876 (the other three checks). The plaintiff testified that the checks were made so payable at the request of Mr. Jay and that he never received a written invoice or bill requesting said payments but were only oral requests made by Mr. Jay.
The January 6th check was indorsed by Mr. Jay 11 Howard Interiors-I. Jay Flaum ’ ’ and was cashed at “ L & L Food Stores, Inc ”. The January 17th check was certified according to the plaintiff by Mr. Jay without his knowledge thereof and was indorsed-1 ‘ Howard Interiors, Ltd-I. Jay Flaum (next word illegible and unexplained) followed by the word 1 Prop ’ ”. It is to be noted with respect to this check that the certification stamp affixed to the face of the check by the Bankers Trust Company states 11 payable only if unaltered since issuance and if properly endorsed.” This check appears to have been cashed by the Manufacturers Hanover Trust Company. The February 3rd check was indorsed 11 Howard Interiors Ltd-I. Jay Flaum ” and was cashed at the 11 L & L Food Stores, Inc.”. The July 28 check was indorsed 11 Howard Interiors, Ltd-I. Jay Flaum ” and was also cashed at11 L & L Food Stores, Inc.”.
Both defendants appeared in this action by their attorney and answered the complaint of the plaintiff with a general denial and also interposed a counterclaim for $454.46. No affirmative defenses were interposed by either defendant.
At the conclusion of the plaintiff’s case, the attorney for the defendants moved that the complaint be dismissed as against Mr. I. Jay on the grounds that the plaintiff had failed to make out a prima facie case against the defendant Jay; that this was not a case of an undisclosed principal; and that the proof indicates that the plaintiff had contracted with Howard Interiors, Ltd., and not with Mr. I. Jay. The motion was opposed by the plaintiff, on the grounds that he doubted whether or not Howard Interiors, Ltd., was, in fact, a corporation duly organized and licensed to conduct business as such, and further that he believed Howard Interiors, Ltd., to be a fictitious entity which was solely the creature of Mr. Jay. He further stated in his argument that he would show on the defendants’ case that Howard Interiors, Ltd,, did not exist as a corporation.
At this point, the court inquired of the attorney for the defendants whether or not Howard Interiors, Ltd., was, in fact, a corporation and, if so, where it had been incorporated. The defendants’ attorney responded that he believed Howard Interiors to be a corporation solely based upon statements made to him by Mr. Jay, but that he had no other information with respect to its incorporation, principal place of business, assets, etc, In view of the manner in which the checks had been cashed *877 and apparently not deposited in a corporate account for clearance; and apparently cashed by Mr. Jay personally, the court reserved decision on the defendants’ motion.
The defendants ’ attorney then rested his case without offering any proof to contradict the plaintiff’s ease or in support of the counterclaim, and then renewed his motion to dismiss the complaint as against Mr. Jay. Under all the circumstances: The manner in which the initial agreement had been made between the plaintiff and Mr. Jay; the calling card which does not indicate a corporate office or title in its description of Mr. Jay; the written agreement between Howard Interiors, Ltd. and the plaintiff signed by Mr. Jay without corporate description as to his identity; the manner in which Mr. Jay personally indorsed all four check payments of the plaintiff — three of which he cashed in a food store which does not indicate that he was purchasing furnishings or services upon behalf of the plaintiff or of Howard Interiors, Ltd., in furtherance of the agreement with plaintiff; the fact that the one check which he did not cash at L & L Pood Stores was certified and cashed through a bank, but is indorsed by Mr. Jay with the descriptive word “ Prop.” following his name leading the court to conclude that he was revealing himself as the sole owner of Howard Interiors, Ltd., because of the admonition of the certification stamp reindorsement; the fact that apparently none of the plaintiff’s payment checks were deposited to any corporate account involved with or named Howard Interiors, Ltd. for appropriate clearance and payment for furnishings and services as contracted; the fact that both defendants appeared and answered without asserting an affirmative defense that Mr. Jay was not a proper party to this proceeding — all lead this court to the firm belief that the complaint should not be dismissed without further positive proof to the contrary from the defendants as against Mr. Jay personally.
There is such a merger of identities by word and deed between Mr. Jay and Howard Interiors, Ltd., as to make the conclusion inescapable that both defendants are really one in this action. This conclusion also impels the court to pierce the so-called corporate veil in order to prevent a fraud or patent injustice from being prepetrated against the plaintiff who has, in the opinion of the court, established a prima facie case for recovery as against both defendants.
The case of Walkovsky v. Carlton (18 N Y 2d 414, 417) is apposite with reference to piercing the corporate veil. “ The law permits the incorporation of a business for the very purpose of enabling its proprietors to escape personal liability (see, e.g., Bartle v. Home Owners Co-op., 309 N. Y. 103, 108) but,
*878 manifestly, the privilege is not without its limits. Broadly speaking, the courts will disregard the corporate form, or, to use accepted terminology, ‘ pierce the corporate veil ’, whenever necessary 1 to prevent fraud or to achieve equity ’. (International Aircraft Trading Co. v. Manufacturers Trust Co., 297 N. Y. 285, 292.) In determining whether liability should be extended to reach assets beyond those belonging to the corporation, we are guided, as Judge Caedozo noted, by ‘ general rules of agency \ (Berkey v. Third Ave. Ry. Co., 244 N. Y. 84, 95.) In other words, whenever anyone uses control of the corporation to further his own rather than the corporation’s business, he will be liable for the corporation’s acts ‘ upon the principle of respondeat superior applicable even where the agent is a natural person ’. (Rapid Tr. Subway Constr. Co. v. City of New York, 259 N. Y. 472, 488.) ”
According to the plaintiff’s uncontradicted testimony, the defendants failed to deliver the bulk of the merchandise and perform the bulk of the services for which they had contracted.
To hold otherwise, would result in a Pyrrhic victory for the plaintiff if the complaint against Mr. Jay were to be dismissed and judgment only then rendered solely against Howard Interiors, Ltd., which might prove to be no legal entity at all and without assets as such. There was no showing furthermore by the defendants that Howard Interiors, Ltd., was, in fact, still in existence as a bona fide going business or that it had any assets from which judgment could be satisfied.
In view of the fact that plaintiff’s case has been uncontradicted by any offer of proof on the part of the defendants, this court finds judgment for the plaintiff in the sum of $1,120, based upon his amended complaint with interest thereon running from February 1, 1969, together with the costs of this action. The defendants’ counterclaim is dismissed for lack of proof.
The $1,120 judgment is computed as follows: The amended complaint of the plaintiff is for the sum of $1,650. The proof of the plaintiff shows that he paid $1,800. However, the plaintiff admits to having received the installation of certain wallpaper which he values for materials and labor in the sum of $150, thus reducing his demand to $1,650. Defendants did not produce any testimony to contradict the $150 evaluation. Plaintiff also admits to having received from the defendants two living room lamps valued at $45 each; a floor lamp at $100; five Chen paintings at $290; the installation of bathroom paper at $49; a breadbox retailing at $11.98; a garbage can retailing at $13.50; four ceiling fixtures valued at $28; miscellaneous useable appliances valued at $25; and a step stool valued at $'7,95. *879 Based upon the plaintiff’s version of the contract, the court gives due credit to the plaintiff for those items which were purchased at retail when he should have been paying for them at 10% above wholesale cost and further gives plaintiff a credit of $79 for one defective painting and the cost of repairing its warped frame, and concludes that the defendants should be credited as against the amended amount claimed with the sum of $530, thus leaving a balance of $1,120, which is the sum of the judgment herein.
(Amended decision, February 3,1970.)
On the court’s own motion, the decision dated January 26, 1970, is hereby amended and modified as follows:
The sum of $1,120 granted as judgment for the plaintiff, together with interest thereon, running from February 1, 1969, is amended to include the additional sum of $239. Thus, the full amount of the judgment awarded to the plaintiff herein is now in the sum of $1,359, with interest thereon running from February 1, 1969, together with the costs of this action.
The last paragraph of my decision dated January 26, 1970, is further amended to delete the following items therefrom: “two living room lamps valued at $45 each; a floor lamp at $100; * * * the installation of bathroom paper at $49 * * * ” ■and the plaintiff is accordingly credited with these sums totaling $239.
Further, the amount originally credited to the defendants’ account in the sum of $530 is now accordingly reduced to a credit of $291, thus leaving a balance of $1,359, which is the sum of the judgment herein.
Except as hereinabove indicated, the remainder of my decision of January 26, 1970, stands as published.